# Docket 03-93031-mhm
# In re Group Management Corp.

Filed in U.S. Bankruptcy Court
Atlanta, Georgia

MAR 1 7 2022

M. Regina Thomas, Clerk
By:_____
Deputy Clerk

Submitted by:
/s/ Ulysses T. Ware

_____

Ulysses T. Ware, (the "**11 USC 1109(b) Statutory Party in Interest**")
Legal representative for the Debtor, Group Management (an unincorporated entity)
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com
March 17, 2022

# In the United States Bankruptcy Court
# For the Northern District of Georgia
# Atlanta Division

_____

# Exhibit 03.17.22

**PLEASE BE ADVISED AND TAKE NOTICE**: The Debtor, **Group Management** ("**GPMT**"), and

its legal representative, **Ulysses T. Ware**, 11 USC 1109(b) *statutory parties in interest* in regard

to GPMT's Chapter 11 proceedings, 03-93031-mhm, hereby this 17th day of March 2022, **GIVES**

**NOTICE**, based on newly available information, see attachment, of their intent to move in the

Bankruptcy Court (NDGA) for an order to reverse and vacate all orders and judgments of *dismissal*

Page **1** of **8**
Re: Exhibit 03.17.22 re: Notice of motion for vacate for lack of Article III subject matter jurisdiction and
fraud on the court, Rule 9024/60(d)(3)
**Thursday, March 17, 2022**

*with prejudice* and other relief granted the "Civil Plaintiffs"[1] entered therein for the following factual and legal reasons:

- (i) lack of Article III subject matter jurisdiction over the Chapter 11 proceedings with respect to the grant of any judicial relief to the *Alpha Capital, AG, et al. v. IVG Corp., a/k/a Group Management Corp., (OTCBB:GPMT), et al.*, 02cv2219 (SDNY) (LBS) (deceased), plaintiffs: the clients of the Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, ("KTS")—that is,

- (i) being **unregistered broker-dealers operating in criminal violation of the federal securities laws**;

- (ii) 15 USC 77b(a)(11) **statutory underwriters** of GPMT;

- (iii) Rule 9024/60(d)(3) fraud on the court;

- (iv) being in willful and knowing violation of N.Y. Penal Law § 190.40, the **_criminal usury law_**; and

- (v) for an order of referral of the 03-93031 proceedings to the United States Department of Justice's Criminal Division, with a judicial referral and recommendation to open a criminal investigation of:

- Margaret H. Murphy

---

[1] The "Civil Plaintiffs" are the clients of KTS that fraudulently initiated the 02cv2219 (SDNY) lawsuit, while recklessly knowing *they lacked all Article III and 28 USC 1332(a) standing and subject matter jurisdiction;* and *fraudulently* appeared in GPMT's Chapter 11 reorganization, 03-93031, while lacking all standing or legal rights to enforce the null and void ab initio illegal contracts entered in and/or performed in **criminal violation** of the **federal securities laws**, i.e., 15 USC 77e, 77x, and 78ff; and in violation of N.Y Penal Law §190.40, the **criminal usury law**.

Re: Exhibit 03.17.22 re: Notice of motion for vacate for lack of Article III subject matter jurisdiction and fraud on the court, Rule 9024/60(d)(3)
**Thursday, March 17, 2022**

- C. Ray Mullins

- M. Regina Thomas

- Joyce Bihary

- Wendy L. Hagenau

- Patricia Sinback

- Dennis S. Meir, Esq.

- John W. Mills, III

- J. Henry Walker, Esq.

- Kilpatrick, Townsend, & Stockton, LLP

- Kenneth A. Zitter, Esq.

- Thomas W. Thrash, Jr.

- Timothy C. Batten, Sr.

- James N. Hatten

- Sims W. Gordan, Jr.

- The State Bar of Georgia's Office of the General Counsel's former and current employees and agents.

- The U.S. Marshals (NDGA): for the illegal and unlawful September 1, 2004, kidnapping of Ulysses T. Ware.

# NO FURTHER NOTICE WILL BE GIVEN.



```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                    ATLANTA DIVISION                P. 121

 3   ALPHA CAPITAL
     AKTIENGESELLSCHAFT, ET AL.,    )    N.D. GA. CASE NO.
 4                                  )    1:04-MJ-1203
                                    )
 5                   PLAINTIFFS,    )    S. DIST. N.Y. CASE NO.
                                    )    02-CIV-2219-LBS
 6                                  )
              VS.                   )    ATLANTA, GEORGIA
 7                                  )    SEPTEMBER 1, 2004
                                    )    3:30 P.M.
 8   GROUP MANAGEMENT CORP.,        )
     ET AL.,                        )
 9                                  )
                     DEFENDANTS.    )
10

11

12                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE THOMAS W. THRASH, JR.
13              UNITED STATES DISTRICT JUDGE.

14

15   APPEARANCES OF COUNSEL:

16   FOR THE DEFENDANT:        THOMAS WARE, PRO SE

17

18

19

20

21

22   OFFICIAL COURT REPORTER:     DARLA J. COULTER
                                  2188 U.S. COURTHOUSE
23                                75 SPRING STREET, SW
                                  ATLANTA, GEORGIA 30303
24                                (404)215-1558

25   TRANSCRIPT RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY COMPUTER
```

Page **4** of **8**
Re: Exhibit 03.17.22 re: Notice of motion for vacate for lack of Article III subject matter jurisdiction and fraud on the court, Rule 9024/60(d)(3)
**Thursday, March 17, 2022**



Q: Approximately how many companies have you assisted Alpha Capital with, let's say the last 5 years?

A. A good few hundred.

Q. A good few hundred?

A. Yes.

Rabinowitz further testified, Tr. 217-19, as follows:

Q: Did you on behalf of Alpha Capital invest in a company by the name Cybernaut?

A: Yes.

Q: How much did you invest in Cybernaut?

A: A few million over a few years.

Q: How much did you make on this investment?

A: We made alot of money. I don't remember.

Q: How much is alot?

A: Maybe $10 million.

Q: So you made $10 million on a [few] million investment?

A: Give or take.

Q: Now, when you started investing in [Cybernaut] wasn't the stock trading over $9 and went to 42 cents a share [after you and Alpha Capital shorted the stock]?

. . .

Taking Rabinowitz' testimony at Tr. 206, "a good few hundred" companies he and Alpha Capital AG invested in, with the amount of money Rabinowitz admitted to making on Cybernaut, Tr. 218-19, "[m]aybe $10 million," the Badian Gang's insider-trading scam has criminally profited by: (300-400 companies) multiplied by ($10,000,000) equals $3-4 billion (US Dollars) in ill-gotten gain: a continuing criminal financial enterprise operated from within the U.S. Courthouse at 500 Pearl St, New York, NY, and One St. Andrews Plaza, New York, by Art. III judicial officers and DOJ Officials and staff.

U.S. v. Ware, 04-CR-1224(RWS) and 05-CR-1115(WHP) were both brought to officials of the DOJ

[several illegible paragraphs of email/text]

3501 - 72

to Mr. Ware, " ... I will have Judge Sand throw your ass in prison, nigger, and you will never get out ... who do you think that you are fucking with ... I want that stock and those opinions, else I will have the marshals arrest your ass ... you better give them to us ... I'm not playing around with you ... don't do it and see what happens to you ...."[10] (emphasis in original) (quoting Kenneth A. Zitter, Esq. in March 2003; see also the transcript of the September 1, 2004 illegal arrest (kidnapping) proceedings of Mr. Ware in Atlanta, GA, on the admitted request of Zitter and Rabinowitz, by the U.S. Marshals (NDGA) held before District Judge Thomas W. Thrash, Jr.; cf. Doc. #88 order in 2219 (Sand, J.) ruling Thrash and the Marshals lacked authority and jurisdiction to have entered Mr. Ware's law office in Atlanta, GA on September 1, 2004 demanding the issuance of bogus Rule 144(k) legal opinions and more than 10 million free-trading shares of GPMT's stock)[11].

States in 2002-2007 attempting to extort GPMT and Mr. Ware out of more than $500 million dollars in

U.S. District Court for the Northern District
of Georgia - 243 F. Supp. 2d 1375 (N.D. Ga.
2003)
January 13, 2003

243 F. Supp. 2d 1375 (2003)

Jeffrey A. BRYAN, Plaintiff,
v.
Margaret H. MURPHY, Thomas W. Thrash,
William S. Duffey, Jr., and Melanie D. Wilson,
Defendants.

No. CIV.A.1:02-CV2492BBM.





## ☰ **JUSTIA**

## I. *Factual and Procedural Background*

In his complaint, Jeffrey A. Bryan ("Bryan"), proceeding *pro se,* contends that United States Bankruptcy Judge Margaret H. Murphy ("Murphy") and United States District Judge Thomas W. Thrash ("Thrash") violated his civil rights while adjudicating his bankruptcy case. Specifically, Bryan alleges that his bankruptcy attorneys lied about a $30,000.00 fee he paid them, in order to ensure that the funds were excluded from Bryan's bankruptcy estate. After discovering his attorneys' fraud, Bryan allegedly reported the issue to Murphy. Although Bryan made Murphy aware of his attorneys' bad behavior, she did not investigate the issue. Instead, Bryan believes that Murphy "took affirmative acts and actions to aid and abet [his attorneys] from having legal or financial liability for their false statements." She took these actions, according to Bryan, "to ensure that the legal licenses and professional standing of [his

Re: Exhibit 03.17.22 re: Notice of motion for vacate for lack of Article III subject matter jurisdiction and fraud on the court, Rule 9024/60(d)(3)
**Thursday, March 17, 2022**

| 75. | 9/1/04 Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04: Dismissed pursuant to order of Judge Leonard B. Sand |

76.  According to Sr. U.S. Probation Officer Atonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced





# Sept. 1, 2004 kidnapping

WARE, ULYSSES THOMAS                                          P47014 - C. Tyler

15

common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

77.  On September 28, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78.  On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the corporate surety bond was discharged.

PART C. OFFENDER CHARACTERISTICS

Page **7** of **8**
Re: Exhibit 03.17.22 re: Notice of motion for vacate for lack of Article III subject matter jurisdiction and
fraud on the court, Rule 9024/60(d)(3)
**Thursday, March 17, 2022**

-----Original Message-----
From: Alexander.Southwell@usdoj.gov [mailto:Alexander.Southwell@usdoj.gov]
Sent: Wednesday, October 06, 2004 1:04 PM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Thomas Ware

He likely means when he was arrested on the civl contempt order. He was arrested in
Atlanta and released the same day, which was somewhere around the beginning of September
As it turned out, a warrant on a civil contempt order cannot extend beyond 100 miles fr
the courthouse or in the same state, so he was improperly arrested (which he pointed out
to Judge Sand, the wily guy that he is). So we are working on a criminal contempt charg
which (confidentially) should happen within a week or two.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Wednesday, October 06, 2004 12:57 PM
To: Southwell, Alexander
Subject: Thomas Ware

Page **8** of **8**
Re: Exhibit 03.17.22 re: Notice of motion for vacate for lack of Article III subject matter jurisdiction and
fraud on the court, Rule 9024/60(d)(3)
**Thursday, March 17, 2022**

18-3023
Adar Bays, LLC v. GeneSYS ID, Inc.

# In the
# United States Court of Appeals
# For the Second Circuit

_____

August Term 2019
No. 18-3023

ADAR BAYS, LLC,
*Plaintiff-Appellee,*

*v.*

GENESYS ID, INC. FKA RX SALES, INC.,
*Defendant-Appellant.*

_____

On Appeal from an Order of the United States District Court for the
Southern District of New York.

_____

SUBMITTED: FEBRUARY 26, 2020
QUESTIONS CERTIFIED: JUNE 11, 2020
DECIDED: MARCH 15, 2022

_____

Before: LIVINGSTON, *Chief Judge*, PARKER, and NARDINI, *Circuit Judges.*

_____

GeneSYS ID, Inc. appeals from an order of the United States District Court for the Southern District of New York (Andrew L.

CERTIFIED COPY ISSUED ON 03/15/2022

Carter, Jr., *J.*), granting summary judgment in favor of Adar Bays, LLC, the holder of a Convertible Redeemable Note securing a loan to GeneSYS. The loan was in default, and the Defendant raised an affirmative defense of usury. The district court held that the Note's interest rate did not violate the New York State criminal usury law, N.Y. Penal Law § 190.40. On June 11, 2020, we certified two questions to the New York Court of Appeals: (1) whether a stock conversion option that permits a lender, in its sole discretion, to convert any outstanding balance to shares of stock at a fixed discount should be treated as interest for the purpose of determining whether the transaction violates N.Y. Penal Law § 190.40, the criminal usury law; and (2) if the interest charged on a loan is determined to be criminally usurious under N.Y. Penal Law § 190.40, whether the contract is void *ab initio* pursuant to N.Y. Gen. Oblig. Law § 5-511. The New York Court of Appeals answered both questions in the affirmative. Because the New York Court of Appeals stressed that the value of any individual floating-price stock conversion option is a question of fact, we VACATE the district court's order and REMAND for further proceedings consistent with the New York Court of Appeals' opinion.

———————————

KEVIN KEHRLI, Garson, Segal, Steinmetz, Fladgate LLP, New York, NY, *for Plaintiff-Appellee*.

JONATHAN URETSKY, Phillipson & Uretsky, LLP, New York, NY, *for Defendant-Appellant*.

———————————

2

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant GeneSYS ID, Inc. ("GeneSYS") refused to honor the terms of a loan extended to it by Plaintiff-Appellee Adar Bays, LLC ("Adar Bays"), prompting Adar Bays to bring suit for breach of contract.  Adar Bays moved for summary judgment and GeneSYS moved to dismiss the complaint on the grounds that the loan was usurious and therefore void.  GeneSYS appealed from the district court's September 20, 2018, order[1] finding that the loan was not usurious under New York law, denying its motion to dismiss, and granting summary judgment in favor of Adar Bays.  We certified two questions to the New York Court of Appeals, which has now clarified that (1) the value of a floating-price option entitling a lender to convert some of the loan balance to equity should be included in a

---

[1] The district court did not set out its judgment in a separate document as required by Federal Rule of Civil Procedure 58(a).  "Despite the lack of a judgment, this Court has jurisdiction to hear the appeal of the opinion and order, which was a 'final decision' within the meaning of 28 U.S.C. § 1291."  *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90 n.2 (2d Cir. 2021).

calculation of a loan's interest rate when determining if that rate is usurious; and (2) a loan with interest that exceeds New York's 25% criminal usury rate is void and unenforceable. The New York Court of Appeals explained that the selection and application of a method to calculate the value of a floating-price option like the one included in the loan at issue in this appeal is a task for the fact finder. We therefore VACATE the order of the district court and REMAND for further proceedings consistent with this opinion.

Adar Bays lent GeneSYS $35,000 in May of 2016. The loan was documented by a Securities Purchase Agreement ("SPA") and Convertible Redeemable Note (the "Note") that set a one-year term for repayment and provided for an annual interest rate of 8%. The Note also gave Adar Bays the option to convert any or all of the outstanding balance of the loan into shares of GeneSYS common stock at a conversion price set at 65% of the stock's lowest trading price for the twenty prior trading days. Adar Bays was entitled to exercise this

option, at its sole discretion, any time after 180 days from the Note's

issuance.   To that end, the Note provided that GeneSYS was to

instruct its transfer agent to hold in reserve stock amounting to three

times the number of shares required if the Note were fully converted.

The Note also contained significant prepayment penalties.

On May 26, 2016, Adar Bays, at GeneSYS's direction, disbursed

$2,000 to Adar Bays's attorneys and the remaining $33,000 to

GeneSYS.  On November 28, 2016, Adar Bays informed GeneSYS that

it was exercising its option to convert $5,000 of the balance of the loan

into shares of GeneSYS common stock.  GeneSYS refused to honor

Adar Bays's notice of conversion.  To date, GeneSYS has not delivered

any shares or repaid the Note upon maturity.

Adar Bays sued GeneSYS for breach of the SPA and Note.

GeneSYS moved to dismiss the complaint on the ground that the Note

was usurious under New York law and therefore void, and Adar Bays

moved for summary judgment on its breach of contract claim.  The

district court denied GeneSYS's motion to dismiss and granted Adar
Bays's motion for summary judgment. The district court rejected
GeneSYS's attempt to raise a usury defense and held that the Note's
interest rate was not usurious. In so holding, the district court
considered and rejected GeneSYS's arguments that certain
components of the Note—specifically, the $2,000 attorneys' fees
payment, the 180-day period after which GeneSYS was subject to
Adar Bays's conversion option, the conversion option itself, with its
35% discount from the market price of GeneSYS's common stock, the
share reserve, the 24% yearly interest rate that was to apply in the
event that GeneSYS defaulted, and the liquidated damages
provisions—constituted "hidden interest" that brought the Note's
true interest rate above 25%, the level New York law deems criminally
usurious. *See* N.Y. Penal Law § 190.40. Because the district court
determined that the Note's interest rate was not criminally usurious,
it did not reach GeneSYS's further argument that the Note was void

*ab initio*.  The district court did, however, note that "'there [seems to

be] no specific statutory authority for voiding a loan that violates the

criminal usury statute.'"  *Adar Bays, LLC v. GeneSYS ID, Inc.*, 341 F.

Supp. 3d 339, 357 (S.D.N.Y. 2018) (quoting *In re Venture Mortg. Fund,

L.P.*, 282 F.3d 185, 190 n.4 (2d Cir. 2002)).  This appeal followed.

On June 11, 2020, we certified two questions to the New York

Court of Appeals pursuant to title 22, section 500.27 of the New York

Codes, Rules and Regulations and Second Circuit Local Rule 27.2(a):

> (1) Whether a stock conversion option that permits a
> lender, in its sole discretion, to convert any outstanding
> balance to shares of stock at a fixed discount should be
> treated as interest for the purpose of determining
> whether the transaction violates N.Y. Penal Law § 190.40,
> the criminal usury law; and
>
> (2) if the interest charged on a loan is determined to be
> criminally usurious under N.Y. Penal Law § 190.40,
> whether the contract is void *ab initio* pursuant to N.Y.
> Gen. Oblig. Law § 5-511.

*Adar Bays, LLC v. GeneSYS ID, Inc.*, 962 F.3d 86, 94 (2d Cir. 2020).  The

Court of Appeals accepted certification, *Adar Bays, LLC v. GeneSYS ID,*

*Inc.*, 35 N.Y.3d 996 (2020) (mem.), and answered both questions in the affirmative, *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 324 (2021).

With respect to the first question, the district court had held that the 35% discount at which the Note empowered Adar Bays to convert some or all of the outstanding loan balance to GeneSYS stock should not be included in the interest calculation because "[t]he conversion right was simply too uncertain at the time of contracting." *Adar Bays*, 341 F. Supp. 3d at 356.  But the New York Court of Appeals held the opposite, clarifying that "in assessing whether the interest on a given loan has exceeded the statutory usury cap, the value of the floating-price convertible options should be included in the determination of interest."  *Adar Bays*, 37 N.Y.3d at 334 (footnote omitted).  This is so "even though it is possible that the conversion right may never be exercised" because "floating-price conversion options have intrinsic value that is bargained for in these loans" and

"the usury laws are implicated when a lender stipulates for a contingent benefit that, if exercised or triggered, has the potential to cause interest to accrue in amounts greater than the legal limit." *Id.* at 337 (internal quotation marks omitted).

The Court of Appeals reviewed its own precedents and determined that they stood for the twin propositions that "an agreement to pay an amount which may be more or less than the legal interest, depending upon a reasonable contingency, is not *ipso facto* usurious, because of the possibility that more than the legal interest will be paid," *id.* at 338 (internal quotation marks omitted), and that "the contingent nature of the option's exercise [does not] remove the loan from the scrutiny of the usury law," *id.* According to the Court of Appeals, these precedents "require [courts] to assess the overall value of the conversion option at the time of the bargain." *Id.*

The Court of Appeals did not attempt to place a value on the floating-price option included in the Note in this case, nor did it

endorse any particular valuation methodology. *See id.* at 339. Instead, it "le[ft] the determination of appropriate valuation methods for convertible options to fact finders." *Id.* at 338. The Court of Appeals did, however, instruct fact finders to take into account certain principles from its caselaw—specifically that "the valuation of a contingent future payment must be tailored to the risks involved in a particular investment and therefore should exclude contingencies or risks that are part of any loan transaction and, as such, are already taken into account by the usury statutes," and that "if a lender has contractually protected itself in the loan instrument against other risks, those risks also should not be used to discount the value of the conversion option." *Id.* Although the Court of Appeals did not endorse a particular methodology, it hypothesized that, depending on the circumstances, a trial court might find expert evidence, modeling performed by the lender itself, or evidence of past

performance of similarly structured loans to be useful in placing a value on an option. *Id.* at 340–41.

The district court concluded that Adar Bays's stock conversion option should not be included in its interest calculation, and so it did not conduct the type of analysis contemplated by the Court of Appeals. Because this type of task "is the bread and butter of trial courts," *id.* at 340, we conclude that the district court should have the opportunity, in the first instance, to apply the Court of Appeals' guidance to the facts of this case. We therefore vacate the district court's order and remand for application of the principles embodied in the Court of Appeals' opinion.

We further instruct that, should the district court determine on remand that the Note was usurious, it should find the Note void and unenforceable. *Id.* at 326. The district court did not reach the question of the appropriate remedy because it determined that the Note was not usurious. But the district court stated that the Note "would not

necessarily be void" even if its interest rate exceeded the 25% criminal
usury cap because "'there [seems to be] no specific statutory authority
for voiding a loan that violates the criminal usury statute.'" *Adar Bays*,
341 F. Supp. 3d at 357 (quoting *In re Venture Mortg. Fund, L.P.*, 282 F.3d
185, 190 n.4 (2d Cir. 2002)).  As we outlined in our certification order,
New York's civil usury statute prohibits loans at rates exceeding 16%
per year, N.Y. Gen. Oblig. Law § 5-501, while its criminal usury
statute prohibits loans at rates exceeding 25%, N.Y. Penal Law
§ 190.40.  A section of New York's *civil* usury law provides that "all
contracts 'whereupon or whereby there shall be reserved or taken, or
secured or agreed to be reserved or taken, any greater sum, or greater
value, for the loan or forbearance of any money, goods[] or other
things in action, than is prescribed in section 5-501, shall be void.'"
*Adar Bays*, 962 F.3d at 89 (quoting N.Y. Gen. Oblig. Law § 5-511(1)).
But "[t]here is no parallel provision in the criminal usury law for
voiding a loan found to be criminally usurious." *Id.*

12

In response to our second certified question, however, the
Court of Appeals clarified that "loans proven to violate the criminal
usury statute are subject to the same consequence as any other
usurious loans: complete invalidity of the loan instrument." *Adar
Bays*, 37 N.Y.3d at 333. We express no opinion at this time as to
whether the Note's rate exceeds the criminal usury cap. However,
should the district court determine that it does, we instruct the district
court to follow the Court of Appeals' clear directive to find the Note
void *ab initio*. Of course, GeneSYS bears the burden to prove its usury
defense by clear and convincing evidence.

Accordingly, we VACATE the September 20, 2018, order of the
district court denying GeneSYS's motion to dismiss and granting
summary judgment in favor of Adar Bays and REMAND for further
proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

13

# IRNewswires Public Corruption Investigations

## Is the U.S. AG Merrick B. Garland (a/k/a Iago) involved in the operations of Alpha Capital, AG (Anstalt), the Hobbs Act *international money laundering criminal enterprise*?[1]



**U.S. Attorney General Merrick B. Garland**

"Avarice, Avarice, Avarice … all the money is mine …."

**IRNewswires Special Reports**
**Alan Reitman, JD, Ph.D.,** *summa cum laude***, Managing Int'l investigative reporter**
**Harold Morey, Executive Editor**
**February 12, 2022**
**London, UK**

### *"Oh what a wicked web we weave."*

IRN's lawyers and investigators have for the last twelve months conducted extensive investigations on the **U.S. AG Merrick B. Garland**, a former federal appeals court chief judge, and *scorned* Supreme Court nominee. The investigation has focused on very suspicious actions and transactions by New York Senator *Charles E. Schumer*, Mr. Garland's former law clerk, Manhattan U.S. Attorney Damian Williams, Senator Schumer brother, Robert Schumer, Mr. Garland, Alpha Capital, AG (Anstalt), **the**

---

[1] https://failedmessiah.typepad.com/failed_messiahcom/2010/06/friends-question-suicide-of-shady-hasidic-real-estate-mogul-678.html

***Hobbs Act international money laundering criminal enterprise***, several federal judges in the Manhattan federal district court, and former prosecutors from the DOJ's SDNY U.S. Attorney's Office, ("*USAO*").

IRN's lawyers have interviewed several former high-ranking DOJ officials, former prosecutors, and lawyers in Manhattan law firms. All have spoken off the record under strict conditions of source confidentiality. The consensus view among all was that,

> " *... something is not right at the DOJ ... Garland appears to be in a daze ... he is under the grip and complete corrupt influence of Schumer and his cabal .... Where will this all end? It is not going to end well for Garland ... he will eventually be thrown under the bus ... this cannot continue ....*"

Based on the interviews conducted by IRN's investigators, it appears from those in the know regarding American Machiavellian political maneuvers the U.S. DOJ has been *compromised* and has come under the *criminal influence* of New York Senator Charles E. Schumer and his cohort of "the money crowd." This would explain why the DOJ has not taken any actions and prosecuted Alpha Capital, AG (Anstalt), **LH Financial Services,**[2] Ari Rabinowitz, Kenneth A. Zitter, Esq., *convicted felon* Edward M. Grushko, Esq., Barbara R. Mittman, Esq., former prosecutors Alexander H. Southwell, David N. Kelley, Nicholas S. Goldin, and many others that are connected to Alpha Capital, AG (Anstalt), including Manhattan federal judges **Edgardo Ramos** and **Laura Taylor-Swain**.

Moreover, IRN's investigation has uncovered indisputable evidence that the U.S. AG Merrick B. Garland, the U.S. Attorney (SDNY) Damian Williams, Edgardo Ramos, Laura Taylor-Swain, and others *all have and are currently in willful violation of Title 18 Section 401(3), criminal and civil contempt, of numerous court orders and final judgments that all directly or indirectly involve Alpha Capital, AG (Anstalt)*.

Why would the DOJ, the Attorney General of the United States, the U.S. Attorney (SDNY), federal prosecutors, and many federal judges all knowingly and willfully resist and disobey numerous court orders that one way or the other involves Alpha Capital, AG (Anstalt) *a criminal enterprise*?

IRN retained an international business intelligence firm and commissioned a thorough background investigation on Merrick B. Garland, Charles E. Schumer, Alpha

---

[2] https://www.thestreet.com/investing/stocks/bawag-austrias-master-plumber-10263382

Capital, AG (Anstalt), its New York-based affiliate LH Financial Services, and recently alleged *murdered* "shady mogul" Solomon Obstfeld. The results are staggering.

According to the background investigation Alpha Capital, AG and its affiliate, **New York-based <u>unregistered broker-dealer</u> LH Financial Services**[3] (operate by Ari Rabinowitz) have worldwide swindled and defrauded thousands of investors out of more than $5.0 billion (USD).[4] Furthermore, IRN has obtained official documents certified by FINRA in 2021 that confirmed that Alpha Capital, AG, LH Financial Services, Ari Rabinowitz, and others involved in the criminal enterprise *have never lawfully registered in the United States as broker-dealers required by U.S. federal law, Title 15 Section 78o(a)(1).*

Undoubtedly, there appears to be "something rotten in the State of Denmark" (Hamlet). Something so evil, so malicious, and so **avaricious** that Merrick B. Garland and the U.S. DOJ would sacrifice everything to keep covered up and concealed from the American public. Exactly for whom does Merrick B. Garland work? Alpha Capital, AG (Anstalt)? Or the American people? You decide.

According to Sir Winston Churchill, "**the truth [regarding Merrick B. Garland and Alpha Capital, AG (Anstalt)] is so precious it must be protected by a bodyguard of [frauds, conspiracies, perjury, criminal contempts, kidnappings, murder, money laundering, racketeering, and] lies.**"



**Copyright 2022 © IRNewswires. All rights reserved.**

**Copyright 2022 © IRNewswires. All rights reserved.**

---

[3] https://www.thestreet.com/investing/stocks/bawag-austrias-master-plumber-10263382

[4] https://www.secactions.com/commission-partially-settles-microcap-fraud-manipulation-action/