**IT IS ORDERED as set forth below:**



**Date: October 24, 2022**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GROUP MANAGEMENT CORP., | Case No. 03-93031-WLH |
| DEBTOR. | |

## <u>ORDER</u>

This case was closed in May 2003, but Ulysses Thomas Ware aka Thomas Ware has sent numerous documents to the Court since then. Some documents are sent by Mr. Ware individually as a "party in interest" and some as "legal representative" of debtor Group Management Corp. The documents are not always clear as to the relief sought, but the Court will undertake to decipher them and provide a ruling on them.

1

I.    **Facts**

Group Management Corp ("GMC" or "Debtor") filed a chapter 11 petition under the Bankruptcy Code on March 18, 2003. The petition was filed by "Thomas Ware" as attorney for GMC and signed by Lamar Sinkfield as CEO. The case was assigned to Judge Margaret Murphy. The petition reflected assets of $100,000, liabilities of $1.5 million, and outstanding common stock of 54,500,000 shares held by 720 persons. On March 26, 2003, the Court entered an order requiring GMC to obtain new counsel because Mr. Ware had been suspended from practicing in the Northern District of Georgia as of June 29, 1999, for failing to comply with sanctions orders entered in 1995 and 1996 by the Bankruptcy Court. GMC then retained Sims Gordon to represent it.

Prior to Mr. Gordon's representation, Mr. Ware filed a Motion to Reject Executory Contract seeking to reject a "Financing Transaction" allegedly entered into in February 2001 for $1.1 million with Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd and Stonestreet Limited Partnership (collectively "the Subscribers"). Attached to the Motion was a "Subscription Agreement" signed by the Subscribers, which appears to be the Financing Transaction GMC wished to reject. Under the Subscription Agreement, the Subscribers held convertible notes, which could be converted into shares of the Debtor upon certain conditions. Upon his retention, Mr. Gordon filed a similar motion to reject. A hearing on the motion was scheduled for April 15, 2003.

On April 10, 2003, the U.S. Trustee filed a Motion to Dismiss the bankruptcy case with prejudice or, alternatively, to convert the case to chapter 7. The U.S. Trustee alleged that GMC was not a Georgia corporation or authorized to transact business in Georgia, the schedules and statement of financial affairs had not been timely filed, and the case was filed in bad faith to avoid or forestall Mr. Ware's arrest under a Contempt Order issued by the District Court for the Southern

2

District of New York in case no. 02-cv-2219 (S.D.N.Y.) ("SDNY Case"). The U.S. Trustee attached to the motion a copy of the Contempt Order issued in the SDNY Case which recited that in November 2002, the Court had ordered the Debtor and Mr. Ware to honor the Subscribers' conversion requests and that the conversion requests had not been honored. The court in the SDNY Case ordered GMC and Mr. Ware to honor the conversion requests within three days or to pay the Subscribers $1,000/day until the requests were honored. The court also stated it would issue a warrant for Mr. Ware's arrest to be committed to the U.S. Marshals' custody until the contempt was purged. The U.S. Trustee alleged the bankruptcy filing was made for the "improper purpose of obstructing and delaying creditors in the enforcement of their rights and remedies . . . and without any bona fide reorganizational purpose[.]"

On April 11, 2003, the Subscribers responded to the Motion to Reject Executory Contract, through their counsel, Dennis Meir at Kilpatrick Stockton, contending the Subscription Agreement was not executory because the court in the SDNY Case had issued a judgment on it. The Subscribers filed their own Motion to Dismiss or, alternatively, a Motion for Relief from Stay, and brief. The Subscribers also alleged the bankruptcy filing by GMC was in bad faith and for the purpose of evading the orders in the SDNY Case and sought the dismissal of the case or relief from the stay to enforce the order in the SDNY Case. Attached to the Motion was a form 8-K, purportedly signed by Mr. Ware as Chief Executive, indicating that he had resigned from the board of GMC effective March 17, 2003, and that Mr. Sinkfield was appointed to the board and was acting CEO. The Subscribers asked that their Motion to Dismiss be heard at the same time as the Debtor's Motion to Reject.

The Court moved forward with the hearing on the Motion to Reject on April 15, 2003. Mr. Ware and GMC's counsel were present, and Mr. Ware testified extensively as to the Subscription

Agreement and the bases for its rejection. Counsel for the Subscribers and the U.S. Trustee also participated. After the conclusion of the direct examination of Mr. Ware, the Court continued the remainder of the hearing to April 30, 2003 and set the two Motions to Dismiss for the same time.

The GMC Schedules and Statement of Financial Affairs were filed on April 25, 2003. They showed that GMC owned stock in two other companies valued at over $1 million and other intangible assets of over $1 million. The scheduled unsecured creditors included the Subscribers and others totaling over $6 million. Schedule G listed the Subscription Agreement as an executory contract, and Schedule H listed only two holders of common stock (neither being Mr. Ware). Mr. Ware signed the Schedules as "In House counsel".

The continued hearing on the Motion to Reject and the hearing on the Motions to Dismiss were held on April 30, 2003. When the matter was called, GMC's atty, Mr. Gordon, announced a settlement with the Subscribers which would result in the dismissal of the case. The Court was told that negotiations occurred directly between GMC and the Subscribers (and not between the attorneys). The announced settlement required the Debtor to comply with the orders in the SDNY Case. The matter was reset to May 12, 2003, to give the parties an opportunity to document the settlement and dismiss the case. No further hearing was conducted. On May 20, 2003, the Court signed an order granting both the U.S. Trustee's and the Subscribers' Motions to Dismiss and dismissing the case, which was docketed on May 21, 2003. The Order was prepared by Mr. Meir, counsel to the Subscribers, but reviewed and approved by Mr. Gordon for GMC and Mr. Morawetz for the U.S. Trustee. The Order prohibited GMC from filing another bankruptcy petition for a period of 180 days. No one appealed or challenged the dismissal order. The case was closed on June 3, 2003.

GMC filed a second bankruptcy case in this district on December 3, 2003 (after the 180-day period expired), but this time under chapter 7 of the Bankruptcy Code (Case No. 03-83009). Mr. Ware was listed as counsel and Lamar Sinkfield signed again as CEO. GMC filed its Schedules and Statement of Financial Affairs identifying only a domain name as an asset, and identifying the Subscribers as the primary creditors. GMC attended its 341 meeting of creditors. GMC did not receive a discharge. (A corporate debtor is not entitled to a discharge under chapter 7. 11 U.S.C. § 727(a)(1); In re HRN Grp., LLC, 2019 WL 6045478, at *8 (Bankr. N.D. Ga. Nov. 13, 2019)). Mr. Ware, as counsel for GMC, filed a Motion for Sanctions against the Subscribers and Ari Rabinowitz, Michael Finkelstein, and Thomas Badien on September 13, 2004, alleging they violated the stay by continuing proceedings in the SDNY Case. The matter was not scheduled for hearing, and the Court entered an order on March 14, 2005 directing the Debtor to re-serve certain parties and file a certificate of service. No action was taken by the Debtor. In the meantime, the Chapter 7 trustee filed a notice of no distribution on October 12, 2004, and the case was closed on May 16, 2005.

Meanwhile, Mr. Ware's legal troubles continued. On May 28, 2003, and again on June 22, 2004, the court in the SDNY Case entered an order for Mr. Ware's arrest, and the court referred the matter to the U.S. Attorney for prosecution of criminal contempt. On November 17, 2004, Mr. Ware was indicted for criminal contempt and violating 18 U.S.C. § 401(3) in Case No. 04-cr-1224 (SDNY). After trial in November 2007, he was convicted of three counts of criminal contempt and violating 18 U.S.C. § 401(3) and sentenced to 97 months in prison on February 2, 2009. His appeals and numerous requests for reconsideration were unsuccessful. On September 20, 2005, the United States initiated a criminal complaint against Mr. Ware for, inter alia, conspiracy to defraud the United States and use of manipulative and deceptive devices in connection with the sale of

securities in violation of 18 U.S.C. §§ 2, 371 and 15 U.S.C. §77q(a) and 77x (Case No. 05-cr-1115 (SDNY)). He was arrested on September 26, 2005 and indicted on the charges. After a jury trial, he was convicted on two counts on April 30, 2007, and ultimately sentenced to 60 months in prison for Count 1 and 97 months in prison for Count 2. His appeals and numerous motions to set aside the conviction were all denied.

This Court next heard from Mr. Ware in late 2011 when he sent letters to Judge Murphy's chambers. Her chambers responded to Mr. Ware directing him to file appropriate pleadings with the Bankruptcy Clerk, rather than attempt to communicate directly with the judge. In July 2012, Mr. Ware submitted to the Bankruptcy Court an "Emergency Motion for Fraud on the Court Proceedings" ("2012 Motion to Reconsider") seeking relief from the 2003 dismissal, pursuant to Fed. R. Bankr. P. 9024, among numerous other requests. He did not seek to reopen the case. The Bankruptcy Court did not docket the motion, but the Bankruptcy Clerk sent a letter on July 25, 2012 to Mr. Ware informing him that the submission did not concern an active bankruptcy case.

Mr. Ware continued to send documents to the Bankruptcy Court, to Judge Murphy, and to other judges directly. He also asked the Bankruptcy Court for a certified copy of the docket in the GMC case and requested that the Bankruptcy Court return all unfiled papers. On October 5, 2012, the Bankruptcy Court sent Mr. Ware a second letter stating that the papers did not relate to an active bankruptcy case before the Bankruptcy Court for the Northern District of Georgia. The letter also indicated that, per Mr. Ware's request, the Bankruptcy Court was enclosing a certified copy of the docket in Case No. 03-93031 and returning all of the documents that Mr. Ware had sent to the Bankruptcy Court.

On June 10, 2015, the Eleventh Circuit docketed a petition for writ of mandamus filed by Mr. Ware, initiating Case No. 15-12568. Mr. Ware sought an order compelling the Bankruptcy

Court to docket and adjudicate his "Motion to Reconsider." On September 3, 2015, the Eleventh Circuit issued an order and directed the Bankruptcy Court for the Northern District of Georgia to respond to the petition for writ of mandamus, which the Bankruptcy Court did on December 1, 2015. Based on the information presented, the Eleventh Circuit found Mr. Ware had not shown he had standing as a non-party to challenge the 2003 bankruptcy dismissal from which he sought mandamus relief. The Eleventh Circuit also found no evidence Mr. Ware would obtain substantive relief based on his unsupported fraud-on-the-court allegations. Accordingly, the Eleventh Circuit denied his petition for writ of mandamus on March 30, 2016 and denied as frivolous his request to refer the Bankruptcy Court for a criminal investigation. Mr. Ware filed a motion for reconsideration, which the Eleventh Circuit denied on September 14, 2016. He filed a motion for en banc rehearing and relief, which was returned unfiled because the case was closed. Mr. Ware then filed a petition for writ of certiorari, which the Supreme Court denied.

Mr. Ware initiated another petition for writ of mandamus, which was docketed on April 11, 2016 as Case No. 16-11607 (Mr. Ware filed the petition while he was pursuing reconsideration and appeal of the denial of the first mandamus petition). Mr. Ware sought an order compelling the Bankruptcy Court to file, docket, and adjudicate his Rule 9024 motion; to serve him a copy of all transcripts in the bankruptcy case; and certify all pleadings and papers submitted in the bankruptcy case to the SEC and DOJ, requesting the SEC and Department of Justice enter an appearance in the [closed] bankruptcy case and requesting a special prosecutor be appointed to open a criminal investigation into judges and officials from the bankruptcy court and the federal government. The Eleventh Circuit denied his petition on September 23, 2016. The court found Mr. Ware failed to show the bankruptcy court had "a duty exacted by law" to docket his Rule 9024 motion that was not "to any degree debatable." The court found his bare allegations of fraud reflected in the Rule

9024 motion were almost certainly meritless and likely time barred. Further, the Court held Mr. Ware had not shown definitively he had standing as a non-party to challenge the 2003 bankruptcy dismissal from which he sought mandamus relief.

Mr. Ware then filed a third petition for writ of mandamus, which was docketed on June 23, 2016 as Case No. 16-13978. This third petition was filed while the first two petitions were still pending or subject to motions for reconsideration. The Eleventh Circuit Court of Appeals considered and denied his request on March 17, 2017. The Court noted Mr. Ware had not met his burden of showing the Bankruptcy Court had an undebatable duty to docket his Fed. R. Bankr. P. 9024 motion, that his Rule 9024 motion was likely meritless and time-barred, and that Mr. Ware had not shown he had standing to challenge the Bankruptcy Court's 2003 dismissal of the bankruptcy case.

Mr. Ware filed a motion to reconsider the denial of his third mandamus petition, which the Court of Appeals denied on June 16, 2017. Mr. Ware then moved for clarification of the order denying his motion for reconsideration, which the Court of Appeals considered. It entered an order on November 1, 2017 clarifying its ruling on timeliness, standing, and the merits of the Rule 9024 motion. Mr. Ware filed a second motion for clarification. On March 1, 2018, the Court of Appeals provided further clarification on the legal standard applied in determining Mr. Ware's allegations of fraud likely were frivolous and its reasoning in determining that Mr. Ware's standing arguments were improper in his reconsideration motion, and the Court of Appeals denied the second motion for clarification to the extent Mr. Ware sought clarification of matters beyond the scope of the Eleventh Circuit's prior orders. The docket indicates that when Mr. Ware filed yet another request for clarification with the Court of Appeals, it was returned on March 23, 2018 unfiled because a

party may not file a request for "reconsideration of a denied Application to file a Second or Successive Petition."

From 2012 on, Mr. Ware continued sending letters to Judge Murphy and other judges and to the Bankruptcy Clerk. Some were addressed to the Bankruptcy Court, others were copies of letters sent to other courts referring to other cases (the criminal cases and a new case filed on March 21, 2022 in the Eastern District of New York, which was then transferred to the Southern District of New York and given Case No. 22-cv-3409). Occasionally, these letters were returned to Mr. Ware and, at other times, the court responded to Mr. Ware's inquiries (for example: October 1, 2016; February 5, 2017; April 5, 2021; April 21, 2021; June 9, 2021; June 23, 2021; and August 18, 2022). Nevertheless, the letters continued and increased in frequency. Beginning in 2021, the Court endeavored to place these communications on the docket, even when they were not addressed to this Court and were not pleadings in this bankruptcy case. The letters ask a number of questions which, upon review, reflect a lack of understanding by Mr. Ware of the bankruptcy process, this bankruptcy case and its outcome, and the lack of any effect this bankruptcy case had on his legal issues. After much review, the Court distills Mr. Ware's concerns to the following:

a)    Whether the Court has "Article III" jurisdiction of this case;

b)    Whether the Court has accurately maintained the docket in this case;

c)    What effect the dismissal of this bankruptcy case had on GMC or the Subscribers;

d)    What effect subsequent litigation between Mr. Ware and the Subscribers and subsequent decisions by New York courts had on the bankruptcy case;

e)    Whether the Court should reopen this case or otherwise vacate the dismissal order;

f)    Whether the bankruptcy case should be transferred to the Southern District of New York;

g)      Whether the bankruptcy case should be referred to the United States Attorney, Georgia

Bar, SEC, or other investigatory body; and

h)      Whether recusal is necessary.

(Doc. Nos. 84-91, 151-158, 165, 175-184, 187-188, 197-203, 239, 241).

The court will attempt to address Mr. Ware's concerns, but first must address Mr. Ware's

standing to request relief, individually or on behalf of GMC.

## II.      <u>Legal Analysis</u>

### a. **Standing**

As an initial matter, the Court must first determine whether Mr. Ware may properly

prosecute the various requests for relief before the Court. He alleges he is a party in interest under

11 U.S.C. § 1109(b) and legal representative of the Debtor. The question of standing is a threshold

issue. <u>Chen v. Siemens Energy, Inc.</u>, 467 F. App'x 852, 853 (11th Cir. 2012) (standing "is a

jurisdictional prerequisite to suit in federal court.") (quoting <u>Alabama v. United States Env't. Prot.

Agency</u>, 871 F.2d 1548, 1554 (11th Cir. 1989). The burden of establishing standing is borne by

the party seeking to be heard. <u>Time Warner Cable, Inc. v. Hudson</u>, 667 F.3d 630, 635 (5th Cir.

2012). "[T]he question of standing is whether the litigant is entitled to have the court decide the

merits of the dispute or of particular issues." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975). Article

III of the Constitution requires that a plaintiff demonstrate a "case or controversy." <u>See</u> <u>Mass. v.

E.P.A.</u>, 549 U.S. 497, 516 (2007). Courts have interpreted this to require: (1) the party asserting

standing has suffered actual injury or been threatened with injury, (2) the injury is traceable to the

objectionable conduct, and (3) the relief requested is likely to redress the injury. <u>See</u> <u>E.F. Hutton

& Co., Inc. v. Hadley</u>, 901 F.2d 979, 984 (11th Cir. 1990)). The first element of Article III standing

requires "injury in fact," defined as "'an invasion of a legally protected interest' that is 'concrete

and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 330 (2016) (citation omitted).

This Article III standing requirement in federal court applies in bankruptcy court. Section 1109 of the Bankruptcy Code does not expand the concept of standing; rather Article III standing is an overlay to section 1109(b) that guides the courts in determining who is a party in interest in any given issue. In re Alpha Nat. Res. Inc., 544 B.R. 848, 854 (Bankr. E.D. Va. 2016). Section 1109(b) provides "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The universe of entities that can be a "party-in-interest" is not restricted solely to the seven enumerated entities set forth in section 1109, In re Odin Demolition & Asset Recovery, LLC, 544 B.R. 615, 626 (Bankr. S.D. Tex. 2016), because the word "including" as used in the Bankruptcy Code is not limiting. 11 U.S.C. § 102(3). But "while the concept of 'party in interest' is elastic and not limited to the entities listed in [section] 1109(b), it typically refers to someone with a financial or legal stake in the outcome of the case." In re Pulp Finish 1 Co., 2014 WL 201482, at *5–6 (Bankr. S.D.N.Y. Jan. 16, 2014).

Section 1109(b) provides that any party in interest has the right to raise and to appear and be heard on "any issue in a case." Not every party in interest with a financial stake in the overall outcome of the case will necessarily hold a significant interest in, or be concerned with, a particular issue. 7 Collier on Bankruptcy ¶ 1109.04 (16th 2022). The right to appear in any particular proceeding depends entirely on the relationship between the issue in question and the particular circumstances surrounding the stakeholder's particular interest. Id. Thus, "a determination whether an entity qualifies as a party in interest should be made within the specific reorganization process

context for which the determination is sought." In re Am. Motor Club, Inc., 149 B.R. 317, 321 (Bankr. E.D.N.Y. 1993). Because one's interests depend on the nature of the issue, "a person may be a 'party in interest' for some purposes but not others." In re Pulp Finish 1 Co., 2014 WL 201482, at *5–6 (Bankr. S.D.N.Y. Jan. 16, 2014). For example, status as "party in interest" under section 1109(b) does not give standing to file a Rule 60(b) motion, In re El Paso Refinery, LP, 37 F.3d 230, 233 (5th Cir. 1994); In re Boyd, 618 B.R. 133, 159 (Bankr. D.S.C. 2020), or an appeal. Thakkar v. Good Gateway, LLC, 636 B.R. 917, 923 (N.D. Ga. 2022).

Mr. Ware alleges he has standing to request relief because he is a party in interest under section 1109. Mr. Ware is not identified as a creditor; he is not the Debtor or a trustee. He has been held personally liable, civilly and criminally, for his acts while representing the Debtor or serving as an officer or director of the Debtor. It seems his real goal is to "undo" his personal liability, but that desire does not give him "party in interest" standing in the corporation's case.  He also alleges he is a "party in interest" because he is a shareholder. The evidence is conflicting on this point, but assuming without deciding that he was and is a shareholder, even this party in interest determination must be made by evaluating each issue involved and the effect of that issue on a shareholder. The Court will address Mr. Ware's individual standing below in the context of the relief requested.

Mr. Ware's documents also state he is requesting relief as "legal representative" of the Debtor, but Mr. Ware does not have authority to represent the Debtor and request relief for the Debtor. The Debtor in the underlying case is an artificial entity and must be represented by counsel. It is well established in the Eleventh Circuit that a corporation may not appear in federal court without an attorney. Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Dist. Co., 748 F.2d 602, 609 (11th Cir. 1984). While individual parties may plead and conduct their own cases personally

pursuant to 28 U.S.C. § 1654, a corporation and its sole shareholder are still "separate legal persons." In Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985), cert. denied, 474 U.S. 1058 (1986), the Eleventh Circuit confirmed that because a corporation is an artificial entity that can only act through agents, it cannot appear in court acting "pro se." This is true even when the person seeking to represent the corporation or limited liability corporation is its president or major shareholder. See Winzer v. EHCA Dunwoody, LLC, 277 Ga. App. 710, 713-14 (2006) (cites omitted). Mr. Ware now contends GMC is unincorporated. There is no evidence to support this contention but, even if GMC is an unincorporated business entity, Mr. Ware may not prosecute an action or file papers on its behalf. See In re Parrott Broad. Ltd. P'ship, 492 B.R. 35, 39 (Bankr. D. Idaho 2013) (explaining while individuals in bankruptcy or other court proceedings may represent themselves, the same prerogative is not afforded to corporations and other business entities); Licht v. Am. West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994) ("Corporations and other unincorporated associations must appear in court through an attorney"). The rule that a layperson cannot appear in court in a representative capacity applies to all forms of business entities, In re 1103 Norwalk St., L.L.C., 2003 WL 23211564, at *1 (Bankr. M.D.N.C. Nov. 26, 2003), subsequently dismissed sub nom. In re 1103 Norwalk St., LLC, 174 F. App'x 787 (4th Cir. 2006), and cannot be circumvented by subterfuge. See e.g., Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 23 (2d Cir.1983). The bottom line is that a non-attorney litigant may not represent other litigants. Church of the New Testament v. United States, 783 F.2d 771, 774 (9th Cir. 1986).

Mr. Ware was not and is not the legal representative of the Debtor. Mr. Ware was not counsel of record for the Debtor, Mr. Gordon was. Mr. Ware is still not authorized to practice law in this district because he was disbarred from the practice of law in the State of Georgia on October

6, 2008. Mr. Ware cannot represent the Debtor as a non-attorney. Accordingly, he is not the legal representative of GMC.

### b.  Whether the Court has "Article III" jurisdiction of this case

In Docs. Nos. 151, 165, 175, 177, and 187, Mr. Ware asks the Court to verify its Article III jurisdiction. Mr. Ware apparently does not understand that a bankruptcy court is an Article I court, not an Article III court. Nevertheless, the bankruptcy court has jurisdiction over bankruptcy cases.

The analysis of the Court's jurisdiction begins with the statutory scheme because "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). The bankruptcy court has jurisdiction in the first instance to determine its own subject matter jurisdiction. In re Equip. Finders, Inc. of Tennessee, 473 B.R. 720, 727 (Bankr. M.D. Tenn. 2012) (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376–77 (1940)).

The authority to establish bankruptcy courts is found in Article I of the Constitution, which gives Congress the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const art. 1 § 8. The Bankruptcy Code, found in title 11 of the United States Code, contains nearly all the applicable uniform federal bankruptcy law. District courts, not bankruptcy courts, have original but not exclusive jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), however, a district court may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts of that district. The Northern District of Georgia has referred all proceedings within its bankruptcy jurisdiction to the bankruptcy judges.

LR 83.7, NDGa. As extensions of the district court, the Bankruptcy Court is thus authorized to hear all three categories of civil proceedings. In re Tyler, 493 B.R. 905, 911 (Bankr. N.D. Ga. 2013).

The first category of cases, "arising under" proceedings, "are matters invoking a substantive right created by the Bankruptcy Code." Id. at 1345. Such matters are considered core proceedings. Id. at 1348 (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).

The second category, "arising in a case under title 11," pertains to claims that are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Grausz v Englander, 321 F 3d 467, 471 (4th Cir. 2002). Typically, the facts giving rise to a claim "arising in" a bankruptcy case occur during the course of the bankruptcy case. See Mercer v Allen, 2014 WL 185252 (M.D. Ga. Jan 15, 2014); In re Taylor, 2006 WL 6591616 (Bankr. N.D. Ga. May 4, 2006). These matters also constitute core proceedings. Wortley v. Bakst, 844 F.3d 1313, 1318 (11th Cir. 2017).

The third category of cases involves matters relating to a case under title 11. This group includes matters that "could have a material effect on the administration of the case or claims against the bankruptcy estate, but such a claim could exist outside of bankruptcy[.]" See Customized Distrib., LLC v. Coastal Bank & Tr. (In re Lee's Famous Recipes, Inc.), 2011 WL 7068916, at *1-2 (Bankr. N.D. Ga. Dec. 12, 2011) (citing Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 104 (Bankr. D. Del. 2008)). In Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), the Third Circuit Court of Appeals explained that a civil proceeding is related to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id. at 994. The Eleventh Circuit has adopted the Pacor test with little or no variation.  Celotex, 514 U.S. at 308 n.6; see e.g., Miller

15

v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990). But "'[r]elated

to' jurisdiction is not so broad as to encompass litigation of claims arising under state law or non-

bankruptcy Federal law that will not have an effect on the bankruptcy estate, simply because one

of the litigants filed a petition in bankruptcy." Harlan v. Rosenberg & Assocs., LLC (In re Harlan),

402 B.R. 703, 711 (Bankr. W.D. Va. 2009) (citations omitted). A non-bankruptcy case with

common issues of fact with a bankruptcy case is not automatically "related to" the bankruptcy case

for purposes of jurisdiction; the resolution must also affect the bankruptcy estate. See HOC, Inc.

v. McAllister (In re McAllister), 216 B.R. 957, 966 (Bankr. N.D. Ala. 1998). Thus, "bankruptcy

courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."

Celotex, 514 U.S. at 308 n.6. Matters within the Court's "related to" jurisdiction are typically non-

core.

Where a matter is "core" under 28 U.S.C. § 157, the Court is authorized to enter a final

order. 28 U.S.C. § 157(c)(1); Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 34 (2014). Any

objections to that order are appealed to the district court. Id. With respect to non-core matters

within the Court's jurisdiction, the Court issues proposed findings of fact and conclusions of law

to the district court. Id.

In the referenced documents (Docs. Nos. 151, 165, 175, 177, and 187), Mr. Ware asks the

Court to confirm its Article III jurisdiction, particularly in light of the dismissal of Case No. 02-

cv-2219 (SDNY). As explained, this Court has jurisdiction under Article I of the Constitution,

which was invoked when the Debtor, GMC, voluntarily filed this bankruptcy case. Nothing that

happens in another case in another jurisdiction can deprive the Court of its jurisdiction over the

Debtor and property of the estate while a case is pending. The dismissal of Case No. 02-cv-2219

(which, contrary to Mr. Ware's statements, was without prejudice) had no effect on this Court's

jurisdiction of this case in 2003 when it entered the Dismissal Order. See In re Kassover, 2008 WL 4845757, at *2 (Bankr. S.D.N.Y. Oct. 30, 2008).

### c.   Whether the Court has accurately maintained the docket in this case

Mr. Ware complains the Court has not maintained an accurate docket. In particular, he contends the Bankruptcy Clerk should have entered on the docket every letter or document he sent to the Bankruptcy Clerk or a judge at any time, as well as his 2012 Motion to Reconsider and his proposed "Memorandum Decision and Final Order" in this case sent on July 31, 2022 via email to chambers.

Even as a "party in interest," Mr. Ware has not shown he has standing to challenge how the docket was maintained. He has failed to plead any concrete and particularized injury in fact from the way in which the docket has been maintained. Just because he may be dissatisfied with docket entries does not mean he has standing.

The Bankruptcy Clerk is the official custodian of the records and dockets of the bankruptcy court. 28 U.S.C.A. § 156(e). Pursuant to Bankruptcy Rule 5003(a), a clerk must maintain a docket and enter "each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the Courts." Fed. R. Bankr. P. 5003(a). "Judgment" means "any appealable order," Fed. R. Bankr. P. 9001(7), and each judgment must be set out in a separate document. Fed. R. Bankr. P. 7058; Reid v. White Motor, 886 F.2d 1462 (6th Cir. 1989) (citing In re Ozark Rest. Equip. Co., Inc., 761 F.2d 481(8th Cir. 1985)). An "order" is "direction of a court or judge made or entered in writing," Order, Black's Law Dictionary (11th ed. 2019), or "[a] decision issued by a court or authoritative body." Order, Wex Legal Dictionary, https://www.law.cornell.edu/wex/order (last visited Oct. 21, 2022). "Activity" is not defined in the rule, and the Administrative Office has no directives as to what constitutes an "activity". "Activity"

is defined in the dictionary as "something which a person . . . or group chooses to do," *Activity*,

Oxford English Dictionary, https://www.oed.com/view/Entry/1958 (last visited Oct. 21, 2022), or

"work performed to create a result." *Activity*, Dictionary.org, https://thelawdictionary.org/activity/

(last visited Oct. 21, 2022). Colliers states that activity includes "judgments, orders, and pleadings

. . . and proceedings in a case." 9 Collier on Bankruptcy ¶ 5003.03. In each case, though, only

orders, judgments and activities in <u>that</u> case are to be entered.

As a general rule, the clerk of a court has a duty to file documents and papers that are

presented for the purpose of filing, but papers and documents not presented to the clerk are not

filed. <u>In re Mangum</u>, 2006 WL 3626775, at *2 (N.D. Ill. Dec. 7, 2006); Fed. R. Civ. P. 5(e); Fed.

R. Bankr. P. 5005(a)(1); 21 C.J.S. Courts § 340 (2006). Specifically, papers and documents

delivered to chambers are not presented to the clerk for filing. BLR 9003-2. The general

requirement of filing also does not apply when a statute or a court rule expressly authorizes the

clerk to refuse to accept documents and papers for filing under specified circumstances. <u>Wilson v.</u>

<u>Robl</u>, 2007 WL 2746665, at *4 (W.D. Ky. Sept. 19, 2007) (citing 21 C.J.S. Courts § 340 (2006)).

Statutes or court rules may expressly authorize the clerk to refuse to accept papers for filing where

a complaint is submitted by a person who has been found to be a "vexatious litigator." 21 C.J.S.

Courts § 337 (citing <u>State ex rel. Montgomery Cty. Pub. Def. v. Siroki</u>, 108 Ohio St. 3d 334

(2006)); <u>see also</u> <u>Martin-Trigona v. Shaw</u>, 986 F.2d 1384 (11th Cir. 1993). In addition, the clerk

may be directed by court rule not to accept a pleading which is not accompanied by specified

documents. 21 C.J.S. Courts § 337.

Further, a court may refuse to docket items reflecting events taking place in other courts.

In <u>In re Malloy</u>, 2022 WL 1488437, at *2 (E.D. Pa. May 11, 2022), the debtor argued the docket

in the Bankruptcy Court ought to reflect the subsequent actions taken in the higher court, and not

just actions taken in the Bankruptcy Court. Id. On appeal, the District Court affirmed the Bankruptcy Court's decision to leave off these docket entries, holding "[r]equesting that the Bankruptcy court's docket reflect …events that took place elsewhere, were docketed in the courts in which they took place, are not part of the bankruptcy case, and are public record would make the docket entry violate Fed. R. Bankr. P. 5003." Id.

Finally, Courts have also held that after a case is closed, the clerk of the court is under no obligation or duty to file documents in that case, absent a motion to reopen the case by an appropriate party. Miller v. Johnson, 541 F.Supp. 1165, 1176 (D.D.C. 1982); see also Wilson, 2007 WL 2746665, at *4 (bankruptcy court clerk did not err in refusing to file a motion to reconsider in closed case). For example, in In re Stewart, 2020 WL 597843 (Bankr. D.D.C. Feb. 5, 2020), the debtor filed an amended list of creditors, which the clerk docketed. The court concluded that the case not having been reopened, the filing ought to be treated as ineffective. Id. at *2. Similarly, the Eleventh Circuit returned as "unfiled" certain of Mr. Ware's documents submitted in the mandamus action because the action was closed or finally decided. But, a clerk's failure to accept a filing is only a non-nefarious filing error similar to the procedural error encompassed in Rule 5005(c) and can be dealt with in that manner. In re Villegas, 2008 WL 4371668, at *3 (Bankr. S.D. Tex. Sept. 17, 2008).

In this case, Mr. Ware has bombarded this Court with documents. At least since 2021, Mr. Ware has emailed documents to this Judge's chambers' email and her courtroom deputy. The Court receives about one email per day, sometimes more, sometimes less. The Court has attempted to accommodate Mr. Ware by reviewing these emails and asking the clerk to place a description of them on the docket. Mr. Ware has a Pacer account and can therefore check the docket at will. More recently, the court has provided Mr. Ware with "Notice of Electronic Filing" so he receives

19

email confirmation of items reflected on the docket. But none of this satisfies Mr. Ware. Instead, he has many complaints.

First, Mr. Ware contends the Bankruptcy Clerk should have docketed numerous documents and papers delivered after the case was closed. As explained above, the Bankruptcy Clerk was not obligated to docket items after the case was closed, other than a motion to reopen. If that motion was granted, the Bankruptcy Clerk would then begin to docket items under Rule 5005. But, even if the Bankruptcy Clerk was obligated to file items in a closed case, the Court finds no error in the decisions made by the Bankruptcy Clerk.

Second, Mr. Ware argues the Court erred when it did not docket his 2012 Motion to Reconsider the 2003 dismissal of the case. This issue has already been litigated and the Eleventh Circuit rejected that argument when it considered and denied Mr. Ware's three requests for writ of mandamus. The Eleventh Circuit denied his first petition for writ of mandamus seeking an order compelling the Bankruptcy Court to file, docket, and adjudicate his Rule 9024 motion on March 30, 2016. Mr. Ware initiated a second petition for writ of mandamus, which was denied on September 23, 2016. Mr. Ware then filed a third petition for writ of mandamus, which the Eleventh Circuit Court of Appeals denied on March 17, 2017. In each instance, the Eleventh Circuit held Mr. Ware failed to show the bankruptcy court had "a duty exacted by law" to docket his Rule 9024 motion that was not "to any degree debatable." The court concluded Mr. Ware had not shown standing, timeliness of the motion, or the merits thereof. The Eleventh Circuit has addressed Mr. Ware's contention. This Court will not revisit the matter now.

Third, Mr. Ware contends the Court has not accurately maintained the docket in this case because it does not reflect proceedings that have taken place in other courts. Rule 5005 requires the Bankruptcy Clerk to keep a record of judgments, orders, and activities in the Bankruptcy Court;

20

it does not require the Bankruptcy Clerk to docket every filing or pending activity in other cases

As the bankruptcy court observed in <u>Malloy</u>, 2022 WL 1488437, at *2, the docket is not required

to reflect the subsequent actions taken in higher courts or other jurisdictions. Mr. Ware has not

demonstrated the Court violated the Bankruptcy Rules.

Fourth, Mr. Ware complains about the letters he sent to chambers or the Bankruptcy Clerk

not being on the docket. Communications to chambers are not filings with the Court, Rule

5005(a)(1), and need not be docketed. BLR 9003-2.  Papers to be filed must be mailed to the Clerk

or delivered in person to the Clerk. Under General Order 45-2021, only *pro se* <u>debtors</u> may file

via electronic means. GMC is a corporation not eligible to file papers without an attorney and

therefore does not qualify as a *pro se* debtor. Mr. Ware is not a debtor and therefore does not

qualify as a *pro se* debtor. Additionally, Local Rule 9003-2 provides that any requests for relief

"must be by written motion, pleading, or other paper, and not by letter or email. Unless the

Bankruptcy Judge determines otherwise, a letter or email will not be treated as a motion, will not

be considered by the bankruptcy court and will not be docketed in the case." Moreover, letters to

the Bankruptcy Clerk are not orders, judgments, or activities in the case since they do not ask the

Court (i.e., the Judge) to act. Accordingly, the Bankruptcy Clerk was not required to docket Mr.

Ware's voluminous correspondence.

Finally, Mr. Ware complains that the Bankruptcy Clerk did not docket his proposed order

sent to chambers via email on July 31, 2022. As the Court explained to Mr. Ware in its letter of

August 3, 2022, proposed orders are not docketed unless and until entered by the Court. For

attorneys authorized to use CM/ECF, proposed orders are uploaded to CM/ECF and held in

suspense until the Court reviews and evaluates them. For proposed orders submitted by *pro se*

parties or others not authorized to use CM/ECF, the proposed order is held in Court chambers. See BLR 9013-2.

For these reasons, the Court concludes the Bankruptcy Clerk was not obligated to docket any items after the case was closed, including Mr. Ware's 2012 Motion to Reconsider, actions taken by higher courts or in other jurisdictions, letters sent to chambers and the Bankruptcy Clerk, or his proposed order. The Court concludes the Court has accurately maintained the docket in this case.

Mr. Ware has also requested multiple certified copies of the docket pursuant to Rule 5006 which obligates the clerk to "issue a certified copy of the record of any proceeding in a case under the Code or of any paper filed with the clerk on payment of any prescribed fee." Fed. R. Bankr. P. 5006. The Clerk has provided certified copies of the docket to Mr. Ware on several occasions (October 5, 2012; April 5, 2021; June 23, 2021; and August 17, 2022), all without payment, but Mr. Ware complains the certification is inaccurate because it does not include items not on the docket (as described above) and does not certify the authenticity of signatures. The Court finds the Clerk has more than met her duty under Rule 5006. The Clerk must only certify the docket—not the authenticity of what is submitted for filing—and items not placed on the docket are obviously not part of the docket to certify. See Fed. R. Bankr. P. 5006 Advisory Committee Notes; see also United States v. Doyle, 130 F.3d 523, 545 (2d Cir. 1997). Moreover, Mr. Ware's requests for certification are unnecessary and abusive. He has a Pacer account and can see what is on the docket. The Court has provided him with notices of electronic filing so that he receives an email when something is docketed. The certification process is meant to provide admissible evidence in another court, not to allow a litigant to harass the clerk's office. The Court will therefore limit Mr. Ware's future requests for a certified copy of the docket to once every 12 months, absent order of

22

the Court. The Clerk last certified the docket on August 17, 2022 so she will not be obligated to provide another certification until August 16, 2023. Additionally, the fees for certification and copies as set by the Judicial Conference must be paid before the Clerk is obligated to comply with such a request.

### d. Effect of dismissal of this bankruptcy case

This case was dismissed on May 21, 2003 pursuant to an order (the "Dismissal Order") agreed to by Debtor's counsel. Now Mr. Ware wants the dismissal vacated, seeming to contend the dismissal had some effect on his other legal issues. The Dismissal Order made no determination of any claims or defenses of the Debtor, Mr. Ware, or the Subscribers. To understand the effect of dismissal, Mr. Ware must understand the nature of a bankruptcy case and how it differs from other civil litigation.[1]

A bankruptcy case begins with the filing of the petition and the estate is created by property of the debtor, all of which becomes property of the estate. An "automatic stay" goes into effect giving the debtor an opportunity to reorganize its business. Generally, the rights of debtors and creditors under non-bankruptcy law are fixed as of the petition date. Under Chapter 11, the debtor becomes the "debtor in possession." 11 U.S.C. § 1101. The purpose of a Chapter 11 case is business reorganization. In re Brannan, 40 B.R. 20, 25 (Bankr. N.D. Ga. 1984). To this end, the debtor submits a reorganization plan in order to rehabilitate and continue the operation of the business and all of the assets of the debtor are applied to the reorganization effort or the plan may propose a liquidation. Id. The confirmed plan creates new contractual rights, replacing or superseding pre-bankruptcy contracts.

---

[1] The Court suspects Mr. Ware does understand the uniqueness of bankruptcy cases since, as a lawyer, he filed multiple bankruptcy cases.

In a Chapter 11 case, the U.S. Trustee plays a role in monitoring the progress of the case and the debtor's operation of the business. The U.S. Trustee or a party in interest may file a motion to dismiss or convert a Chapter 11 case to a Chapter 7 case "for cause." Generally, if cause is established after notice and hearing, the court must convert or dismiss the case (whichever is in the best interests of creditors and the estate) unless it specifically finds that the requested conversion or dismissal is not in the best interest of creditors and the estate. 11 U.S.C. § 1112(b). Alternatively, the court may decide that appointment of a chapter 11 trustee or an examiner is in the best interests of creditors and the estate. 11 U.S.C. § 1104(a)(3).

If a case is dismissed, such dismissal generally ends the automatic stay and revests property of the estate in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B). "The basic purpose of [Section 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." In re Aheong, 276 B.R. 233, 239 (B.A.P. 9th Cir. 2002) (citing legislative history).[2] "Unless the court . . . orders otherwise," dismissal under section 349(b) returns the Debtor to its pre-bankruptcy status and the estate ceases to exist. 11 U.S.C. § 349(b); In re Westgate Nursing Homes, Inc., 518 B.R. 250, 255

---

[2] The statutory effects of dismissal are provided for by section 349(b) of the Bankruptcy Code, which provides:

>    (b) Unless the court, for cause, orders otherwise, the dismissal of a case other than under section 742 of this title—
>        (1) reinstates—
>            (A) any proceeding or custodianship superseded under section 543 of this title;
>            (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2),
>            (C) any lien avoided under section 506(d) of this title;
>        (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>        (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b).

(Bankr. W.D.N.Y. 2014); see also In re Sweports, Ltd., 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014) (noting the dismissal order terminates the estate); In re Garnett, 303 B.R. 274, 278 (E.D.N.Y.2003) ("[T]here simply is no bankruptcy estate after the dismissal has been entered."). With a dismissal there is no estate and, "[a]fter entry of an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts." In re Creamer, 596 B.R. 920, 921 (Bankr. N.D. Fla. 2018) (citation omitted).

Normally, dismissal of a bankruptcy petition has no long-term consequences for the debtor's ability to re-file. In re Hall, 304 F.3d 743, 746 (7th Cir. 2002). Grounds for dismissal "with prejudice," however, exist under 11 U.S.C. § 349(a) and § 105. Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

This section permits the Court "for cause" to dismiss a case with prejudice. "With prejudice" in this context means either barring the discharge of certain debts or limiting the debtor's authority to file a bankruptcy petition for a certain time period or both. In re Burroughs, 2014 WL 1689969, at *2 (Bankr. N.D. Ga. Apr. 29, 2014); see also Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 938 (4th Cir. 1997) (although the two sanctions differ in purpose and effect, courts often refer to both sanctions as dismissals "with prejudice"). Additionally, section 105(a) of the Bankruptcy Code provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). But, in any construction, the phrase "with prejudice" is limited to these two functions. "With prejudice" does not have the meaning assigned to it in Fed. R. Civ. P. 41.

Here, two motions to dismiss were filed in this case. The U.S. Trustee filed a motion to dismiss the bankruptcy case on several bases: that GMC was not a Georgia corporation or authorized to transact business in Georgia, the schedules and statement of financial affairs had not been timely filed, and the case was filed in bad faith to avoid or forestall Mr. Ware's arrest based on Mr. Ware's failure to honor the Subscribers' conversion requests. The U.S. Trustee sought dismissal of the case with the proviso that Debtor would be ineligible to seek further relief under chapter 11 of the Bankruptcy Code for a period of 180 days (Doc. No. 13). The Subscribers also sought dismissal of the case or, alternatively, for relief from the stay. Before the motions could be heard, though, counsel for the Debtor and for the Subscribers announced in open court that they reached a settlement resulting in the dismissal of the case. Debtor's counsel reviewed and approved the order of dismissal "with prejudice" submitted to the Court, which barred the Debtor from filing a bankruptcy petition under any chapter of the Bankruptcy Code for 180 days.

Upon the dismissal, to which Debtor's counsel consented, the property of the estate revested in the entity in which such property was vested immediately before the commencement of the case, most likely the Debtor. In other words, dismissal returned the parties to their "prepetition financial status quo." Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 454 (2017). Debtor's debts and property were thus subject to general non-bankruptcy laws, unaffected by the bankruptcy. The Court never decided the validity of the Subscribers' claims or the Debtor's defenses thereto. The order of dismissal did not alter the parties' rights, it merely returned them to their pre-bankruptcy status. Even though the case was dismissed "with prejudice," it was only as to a refiling by the Debtor for 180 days and not with prejudice to the Debtor's rights as to the Subscribers' claims. Nothing in this dismissed bankruptcy case had any effect on the Subscribers' claims or Mr. Ware's legal issues arising therefrom.

e.  **Effect of subsequent litigation between Mr. Ware and the Subscribers and of subsequent decisions by New York courts on bankruptcy case**

Mr. Ware seems to believe that events occurring after the entry of the Dismissal Order affect it. He contends that because the SDNY Case was dismissed, the Subscribers do not have a claim and could not have had a claim in 2003. Similarly, Mr. Ware argues that decisions of the New York Court of Appeals and the Second Circuit on criminal usury invalidate the Subscribers' claims. In each instance, he argues the Subscribers' claims are somehow retroactively invalidated, such that the Subscribers had no right to "interfere" in the bankruptcy case. He contends the Dismissal Order is therefore moot. He is wrong.

Effectively, Mr. Ware argues that due to events occurring years after the bankruptcy case was dismissed, the Subscribers lost their "party in interest" right to file a motion to dismiss in 2003. But, standing to file a motion to dismiss is determined at the time the motion was filed. See In re Allison, 2006 WL 2620480, at *3 (Bankr. S.D. Tex. Sept. 12, 2006). In 2003, the Subscribers asserted they were creditors of the Debtor and, as such, were parties in interest. 11 U.S.C. § 1109(b). The Subscribers held convertible notes issued by the Debtor and an order in the SDNY Case for the recovery of money. The Debtor listed the Subscribers as creditors, although disputed. The Debtor filed a Motion to Reject the Subscription Agreement which, if granted, could also give rise to a claim. 11 U.S.C. §§ 365(g)(1) and 502(g). The fact GMC disputed the Subscribers' claim does not eliminate their standing to file a motion to dismiss, In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991), particularly where, as here, the purpose of the motion to dismiss was to continue the litigation in the SDNY Case where the rights of the parties were being determined. So the Subscribers had every right to file a motion to dismiss, and the Court had every right to grant that motion, particularly since the Debtor agreed to it.

27

Dismissal of the SDNY Case in 2007 has no bearing on whether dismissal of the bankruptcy case was warranted in 2003.[3] The SDNY Case was voluntarily dismissed by the Subscribers without prejudice in December 2007. This dismissal did not adjudicate the Subscribers' claims and does not mean the Subscribers' claims are or were invalid. Moreover, whether dismissal of the bankruptcy case was appropriate was determined based on the facts and circumstances as they existed at the time, and a subsequent dismissal of another case in another forum years after the dismissal of the bankruptcy case cannot change that outcome. For example, in In re Sneed, 2008 WL 1782375 (Bankr. E.D. Cal. Apr. 18, 2008), the trustee questioned the reasonableness of a sale transaction after it occurred based on subsequent developments. The court rejected his argument, explaining, "[i]t would be particularly unfair to consider, by hindsight, subsequent events, such as dismissal of the criminal charges . . ., unless those events were reasonably anticipated or known . . . at the time of the transaction." Id. at *7.

Next, Mr. Ware argues that the Subscribers' claims were invalid under a New York Court of Appeals decision and Second Circuit decision on conversion rights and criminal usury decided in 2021 and 2022. See Adar Bays, LLC v. GeneSYS ID, Inc., 28 F.4th 379, 380 (2d Cir. 2022); Adar Bays, LLC v. GeneSYS ID, Inc., 37 N.Y.3d 320 (2021). Subsequent developments in the law generally do not undo prior determinations, Portis v. United States, 33 F.4th 331, 335 (6th Cir. 2022), and a party may not challenge the legal conclusions on which a prior judgment or order rests. Horne v. Flores, 557 U.S. 433, 447 (2009); Capeletti Bros., Inc. v. Metropolitan Dade Cty., 735 F.Supp. 1040, 1042 (S.D. Fla. 1990); In re Damron, 598 B.R. 350, 354 (Bankr. S.D. Ga. 2019).

---

[3] While Mr. Ware contends the New York case was dismissed with prejudice, the record reflects otherwise. On December 20, 2007, the District Court for the Southern District of New York entered an Order of Dismissal Without Prejudice Pursuant to FRCP 41(a)(2) (Doc. No. 90), which clearly says "WITHOUT PREJUDICE." He seems to argue, though, that because the case was dismissed and the statute of limitations has run, the claims were effectively dismissed with prejudice.

Importantly, these cases did not involve Mr. Ware or the Subscribers' claims, so they do not directly affect the Subscribers' claims.

Moreover, the Court did not determine whether the Subscribers had a claim in the bankruptcy case. The Subscribers asserted a claim in the case and the Debtor recognized that assertion when it filed a Motion to Reject the Subscription Agreement as an executory contract. But, ultimately, no determination of the amount or validity of the Subscribers' claim was necessary to the Dismissal Order because the Debtor consented to dismissal.

Finally, dismissal of the case was not dependent on the Subscribers' participation in the case. The U.S. Trustee also filed a Motion to Dismiss raising several grounds for dismissal of the case and requesting the dismissal be with a bar to refiling. Ultimately, Debtor's counsel agreed to dismissal of the case. In other words, the case would have been dismissed on those bases and was not contingent on the Subscribers requesting dismissal. See In re Johnston, 149 B.R. 158 (B.A.P. 9th Cir. 1992) (even if other movants lacked standing as creditors to move to dismiss or convert Chapter 11 case, the U.S. Trustee, who joined in motion to dismiss or convert, was a party in interest with standing to request dismissal or conversion).

The dismissal of the SDNY Case and subsequent New York decisions regarding securities law have no bearing on the bankruptcy case.

### f.  Whether the Court should reopen this case or otherwise vacate the dismissal

The primary relief Mr. Ware seems to want from the Court is for the Court to vacate the Dismissal Order to which the Debtor's attorney agreed. As explained below, Mr. Ware is not entitled to this relief and vacating a 19-year-old dismissal of a bankruptcy case makes no sense. The Court will consider whether the case must be reopened before the request to vacate the

Dismissal Order can be considered, whether Mr. Ware has standing to request reopening, and whether reopening is proper.

i.  <u>Whether the case must be reopened</u>

The case was closed on June 3, 2003, after its dismissal. The first question is whether the case needs to be reopened to consider the motion under Rule 60 to vacate the dismissal. Section 350 of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Section 350(b) in turn provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Section 350 contemplates that "reopening" is available for "fully administered" and closed cases. <u>In re Bailey</u>, 2009 WL 6498530, at *1 (Bankr. N.D. Ga. Sept. 3, 2009). Reopening a case usually occurs to "take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed." <u>Pingaro v. Ameriquest Mortg. Co. (In re Pingaro)</u>, 2008 WL 8664764 (B.A.P. 1st Cir. Aug. 14, 2008) (quoting <u>In re Finch</u>, 378 B.R. 241, 246 (B.A.P. 8th Cir. 2007). Bankruptcy Rule 5010 requires that a case be reopened upon the filing of a motion, and the moving party must pay a fee with the motion to reopen in the same amount as the fee for filing a case under the same chapter on the date of reopening.[4] Bankruptcy Court Miscellaneous Fee Schedule, Item 11. The current fee for filing a motion to reopen a Chapter 11 case is $1167. <u>Id.</u>

---

[4] There is no reopening fee:
- if the case is reopened to file an action related to the debtor's discharge, for instance, to file a complaint to obtain a determination of dischargeability of a debt other than under 11 U.S.C. 523(c);
- if the petition to reopen seeks to correct an administrative error;
- if the judge enters an order waiving the fee;
- if an order has previously been entered waiving the initial filing fee on a Chapter 7 case;
- if the Motion is filed by a US Government agency e.g., the U.S. Trustee.

"Generally, a closed case must be reopened before the bankruptcy court may entertain a substantive matter." Wilson, 2007 WL 2746665 (citing In re Leach, 194 B.R 812, 814-16 (E.D. Mich. 1996)); see also In re Woldeyohannes, 2022 WL 3135287, at *1 (Bankr. D. Conn. Aug. 3, 2022); In re Levy, 2018 WL 1579888, at *2 (Bankr. D. Conn. Mar. 29, 2018) (holding that the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of any requested order). In some instances, though, a bankruptcy case need not be reopened to seek certain relief including, for example, a claim for violation of the discharge injunction or a pre-discharge claim for a stay violation. See Johnson v. Smith, 575 F.3d 1079, 1084 (10th Cir. 2009) (finding no basis to require plaintiff "to move to reopen the Chapter 13 case to pursue [Section] 362(k)(1) adversary proceeding"); In re Stanwyck, 450 B.R. 181, 193 (Bankr. C.D. Cal. 2011) (rejecting "Defendants' assertion that [plaintiff] was required to reopen his prior bankruptcy cases to assert [Section] 362(k) claims"); In re Patterson, 297 B.R. 110, 115 (Bankr. E.D. Tenn. 2003) (finding it not necessary to reopen closed case to proceed with action relating to the discharge injunction).

This case was dismissed, though, before being closed. Closing and dismissing a bankruptcy case are two distinct events. Typically, dismissal does not coincide with termination of all proceedings. Dismissal allows creditors and debtors to get on with their non-bankruptcy business and resolve their disputes in appropriate forums.

Since there is a distinction between reopening a closed case and vacating an order dismissing a case, some courts have held that a dismissed case is not a closed case and cannot be reopened. See e.g., Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich), 229 B.R. 777, 781 (9th Cir. BAP 1999) ("Reopening a dismissed case is an oxymoron – since the consolidated cases were dismissed rather than closed, there are no closed cases to

reopen."). In <u>Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)</u>, 699 F.2d 963, 965 (9th Cir. 1983) (per curiam), the court concluded the word "reopened" used in section 350(b) "obviously relates to the word 'closed' used in the same section." <u>Id.</u> at 965. The court concluded a case cannot be reopened unless it has been closed, and "[a]n order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing." <u>See also</u> <u>In re Peachtree Stratford, LP</u>, 2005 WL 6486095, *1 (Bankr. N.D. Ga. Oct. 25, 2005) ("Court lacks the power under section 350 to reopen a dismissed case to take action in that case as if it had never been dismissed."); <u>Goldenberg v. Deutsche Bank Nat'l Tr. Co. (In re Papazov)</u>, 2013 WL 2367802 (B.A.P. 9th Cir. May 30, 2013) (concluding because debtor could not 'reopen' a bankruptcy case that was not 'closed' for purposes of section 350(a), the bankruptcy court did not abuse its discretion when it denied her motion to reopen).

Other courts, however, have held a case that is dismissed and administratively closed may be reopened for limited purposes because dismissal and closing are separate acts. <u>See</u> <u>In re Ross</u>, 278 B.R. 269, 273 (Bankr. M.D. Ga. 2001) (holding that debtor could reopen case that was dismissed and subsequently closed without affecting the order of dismissal). For example, in <u>Stewart</u>, 2020 WL 597843, the court determined that a case that is dismissed and closed is still a closed case for which a motion to reopen may be filed for certain purposes, including to review the reasonableness of the fees of the debtor's counsel. The court was clear, however, that reopening such a case would not vacate or otherwise affect the dismissal. A case dismissal can be undone only through an appeal or a motion under Rules 9023 or 9024, <u>In re Hashiman</u>, 2020 WL 5914605, at *2 (B.A.P. 9th Cir. Oct. 5, 2020); <u>see also</u> <u>In re Carver</u>, 2021 WL 2932485, at *1 (Bankr. D. Idaho July 12, 2021), and the case must first be reopened. <u>See e.g.</u>, <u>Wilson</u>, 2007 WL 2746665, at *5; <u>In re Leach</u>, 194 B.R. 812, 814-816 (E.D. Mich. 1996).

Still other courts will address a request for reconsideration of a dismissal order without first reopening the case or will treat a motion to reopen a dismissed case as a motion to vacate a judgment or order. See e.g., In re Martin, 2011 WL 4344441, at *2 (Bankr. W.D. Tex. Sept. 14, 2011); In re Lampman, 494 B.R. 218, 222 (Bankr. M.D. Pa. 2013) (construing motion to reinstate case as a motion to reconsider).

This Court agrees with those courts that have held a case dismissed and administratively closed may be reopened for limited purposes and that a case must be reopened before considering relief under Rule 60. The Court understands that closure and dismissal are different creatures, so even though the case is a dismissed case, it is also a closed case for which a motion to reopen may be filed. Here, the case was dismissed on May 21, 2003; it was subsequently closed on June 3, 2003. The Court concludes a motion to reopen can be filed in a case such as this one. The motion to reopen, however, will not affect the Dismissal Order, and the case must be successfully reopened before the Court can entertain a motion to reconsider under Rule 9024.

    ii.  Mr. Ware's standing

In considering a motion to reopen, the movant has the burden of establishing that the case should be reopened, In re Env't Wood Prod., Inc., 609 B.R. 901, 912 (Bankr. S.D. Ga. 2019), and that he has standing to seek the ultimate relief requested. Federal Rule of Bankruptcy Procedure 5010 permits a case to be reopened "on motion of the debtor *or other party in interest.*" Fed. R. Bankr. P. 5010 (emphasis added). Rule 5010 does not define party in interest; instead, courts look to section 1109(b), and they disagree as to whether all those indicated in section 1109(b) have standing to file a motion to reopen or whether only the debtor, trustee, and creditors have such standing. See In re Papazov, 610 F. App'x 700 (9th Cir. 2015); see also Goldenberg v. Deutsche Bank Nat'l Trust Co. (In re Papazov), 610 Fed.Appx. 700 (9th Cir. 2015) (holding that the

enumerated list of "parties in interest" in § 1109(b) may guide a court in determining the scope of potential movants under Rule 5010); see also In re Trigee Found., Inc., 2016 WL 3971734, at *2 (Bankr. D.D.C. July 19, 2016) (in considering whether to reopen a case that was closed, for court administration purposes, after the case was dismissed, "it makes sense that the defendants would have to be a party in interest in order to seek reopening.").

Some courts conclude that standing to seek reopening of a closed case is confined to those with a particular and/or direct stake in the reopened case, such as debtors, creditors, and trustees. In re Canal St. Ltd. P'ship, 269 B.R. 375, 379 (B.A.P. 8th Cir. 2001); Nintendo Co. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356 (10th Cir. 1995) ("This expansive view notwithstanding, when we peruse the case law on standing under these circumstances, we find that concept implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code."); Alexandria Surveys, LLC v. Alexandria Consulting Grp., LLC (In re Alexandria Surveys Int'l, LLC), 500 B.R. 817, 820 (E.D. Va. 2013), aff'd sub nom. Alexandria Consulting Grp., LLC v. Alexandria Surveys Int'l, LLC, 589 F. App'x 126 (4th Cir. 2014) (case law has read "party in interest" under Rule 5010 to be limited to the debtor itself, a trustee, or a creditor).

Other cases suggest, however, that "party in interest" should have the same broad meaning under Rule 5010 as it does under section 1109. In re Odin Demolition & Asset Recovery, LLC, 544 B.R. 615, 626 (Bankr. S.D. Tex. 2016); see also In re Krowel, 631 B.R. 277, 281 (B.A.P. 1st Cir. 2021); White v. Bos., 104 B.R. 951, 954 (S.D. Ind. 1989). Under this reasoning, a shareholder of the debtor would be a "party in interest" and thus a proper party to move to reopen a closed case. See In re Canoe Mfg. Co., Inc., 466 B.R. 251, 253 (Bankr. E.D. Pa. 2012). Nevertheless, the shareholder must have a direct stake in the particular reason for reopening. In Canoe Mfg. Co., for

example, the court recognized that a non-debtor may seek to reopen a closed case and that the movant, who claimed to be a shareholder of the debtor, would be a party in interest to the extent it was seeking relief in his shareholder capacity. Id. at 253. The court nevertheless found it would be an inappropriate exercise of discretion to reopen the case. Id.

The Court concludes, at least in the context of reopening a Chapter 11 case, the better approach is to evaluate the request by all potential "parties in interest" as defined by section 1109 by looking at the financial and legal stake of the movant seeking to reopen the case.

In this case, Mr. Ware is not seeking to reopen the case to accord relief to himself, since he is not the Debtor. Mr. Ware does not assert any stake in reopening the bankruptcy case premised on relief to which he could be entitled as a creditor, such as administration of newly discovered assets. He does not seek additional distributions on a claim. And even if he did, no assets exist to distribute. Mr. Ware is also not a trustee, and no trustee was appointed in the Chapter 11 bankruptcy case.

Instead, Mr. Ware seeks to reopen the case for the primary purpose of vacating the dismissal of this bankruptcy case in 2003 and taking other actions personally against the Subscribers. Mr. Ware contends he is a party in interest with standing to seek to reopen the case. At the hearing before the Court on April 15, 2003, Mr. Ware stated he owned 200,000-300,000 shares in the Debtor worth approximately $160,000. The Debtor's sworn Schedules do not disclose any such interest, so it is not clear whether Mr. Ware did, or does, in fact own an equity security interest in the Debtor (to the extent the Debtor exists and has shares—Mr. Ware contends GMC is an unincorporated business entity, so it is not clear that it has any shares to issue). To the extent Mr. Ware was, or still is, a shareholder of the Debtor and is seeking relief in his shareholder capacity, it seems he would fall within the parameters of a "party in interest." He must, however,

still demonstrate he has constitutional standing and establish grounds to reopen the case. Because

his standing to reopen the case turns on the reasons for reopening and the relief requested, the

Court will address his standing as it addresses the relief requested.

### iii.  Reopening is not proper

As an initial matter, Mr. Ware has not paid the required $1167 filing fee for a motion to

reopen, so granting the motion is improper. Turning to the merits, Mr. Ware is seeking to reopen

the case "for cause" to have the Dismissal Order vacated. "The Code does not define 'other cause,'

and the decision to reopen is discretionary." Env't Wood Prod., 609 B.R. at 912; In re Judson, 586

B.R. 771, 772 (Bankr. C.D. Cal. 2018). A bankruptcy case should not be reopened where it would

be a futile exercise or a waste of judicial resources. See Redmond v. Fifth Third Bank, 624 F.3d

793, 803 (7th Cir. 2010). If the moving party cannot obtain the substantive relief which it intends

to seek, "then there is no reason to grant a motion to reopen." In re Frazer/Exton Dev., 503 B.R.

620, 635 (Bankr. E.D. Pa. 2013). "The question of whether to reopen 'depends upon the

circumstances of the individual case.'" Env't Wood Prod., 609 B.R. at 912 (citations omitted). A

bankruptcy judge may consider a number of nonexclusive factors in determining whether to

reopen, including:

> (1) the length of time that the case was closed;
> (2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is
> the basis for reopening the case;
> (3) whether prior litigation in the bankruptcy court determined that another court
> would be the appropriate forum;
> (4) whether any parties would suffer prejudice should the court grant or deny the
> motion to reopen;
> (5) the extent of the benefit to *any party* by reopening; and
> (6) whether it is clear at the outset that no relief would be forthcoming if the motion
> to reopen is granted.

Env't Wood Prod., 609 B.R. at 912.

A number of these factors support denial of Mr. Ware's motion to reopen. First, this case was closed 19 years ago in 2003. "As the time between closing of the estate and its reopening increases, so must also the cause for reopening increase in weight." In re Geo Specialty Chem. Ltd., 577 B.R. 142, 179 (Bankr. D.N.J. 2017); In re Nylon Net Co., 225 B.R. 404, 405 (Bankr. W.D. Tenn. 1998) ("It is well settled that the greater the elapse of time between the closing of the bankruptcy case and the request to reopen, the more compelling the reason for reopening the case should be."). Reopening a case that was dismissed and closed 19 years ago would be extraordinary and, as discussed below, no compelling reason exists to reopen the case. The Debtor's estate terminated on the entry of the Dismissal Order and all of the estate property revested in the Debtor under section 349(b)(3). There is therefore no estate to be administered. Moreover, the lengthy delay is prejudicial to creditors who may not still be in existence, have purged files, or taken actions in reliance on the dismissal of the bankruptcy case.

Further, "[c]ourts routinely decline to exercise their discretion to reopen bankruptcy cases where the parties are seeking or could seek relief in a competent alternative forum." In re HBLS, L.P., 468 B.R. 634, 639 (Bankr. S.D.N.Y. 2012). This is especially true if the movant already sought and failed to obtain the same substantive relief in another forum, which may invoke preclusion doctrines. In re Neil's Mazel, Inc., 492 B.R. 620, 628 (Bankr. E.D.N.Y. 2013). Here, Mr. Ware's complaint seems to be that the Subscribers did not have a valid claim in the bankruptcy case and were not parties in interest authorized to seek relief in the case. Putting aside the fact the Debtor filed the case and the Debtor filed the motion to reject executory contract, the granting of which would create a claim, 11 U.S.C. 502(g)(1), Mr. Ware has contested the Subscribers' claims in multiple other forums. The litigation began in the SDNY Case, and then continued in the criminal action for contempt 04-cr-1224 (SDNY). Most recently, Mr. Ware has lodged complaints

about the Subscribers in 22-cv-3409 (SDNY). The validity of the Subscribers' claims need not be decided by the Bankruptcy Court and is not relevant to the disposition of the bankruptcy case.

Courts also decline to reopen cases where there is no merit to the ultimate relief being requested. See, e.g., Cohen v. CDR Creances S.A.S. (In re Euro–Am. Lodging Corp.), 549 Fed.Appx. 52, 54 (2d Cir. 2014). Where the ultimate relief being sought has no merit, reopening the case would be "meaningless." State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1996); In re Atari, Inc., 2016 WL 1618346, at *11 (Bankr. S.D.N.Y. Apr. 20, 2016); In re Hashiman, 2020 WL 5914605 (B.A.P. 9th Cir. Oct. 5, 2020).

Here, the ultimate relief Mr. Ware seeks is for the Court to vacate the Dismissal Order under Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60. The rule permits relief from a final judgment, order, or proceeding in certain circumstances. Fed. R. Civ. P. 60; Fed. R. Bankr. P. 9024. The decision to alter or amend a judgment is highly discretionary. Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th Cir. 1985).

Mr. Ware alleges a fraud has been perpetrated on the Court by the Subscribers justifying relief under Rule 60(d)(3) and, further, that the Subscribers' claims are invalid as described above, which the Court construes as seeking relief under Rule 60(b). Mr. Ware does not have standing to pursue relief under Rule 60(b).

Rule 60(b) states a court may grant relief from judgment to "a party or its legal representative." In re Remington Park Owners Ass'n, 548 B.R. 108, 115 (Bankr. E.D. Va. 2016). The term "legal representative" means not only a duly appointed legal representative, but also individuals in a position tantamount to that of a party—i.e., nonparties whose interests are directly affected by the final judgment, that is, one who is in privity with a party. See id.; In re El Paso Refinery, LP, 37 F.3d 230, 234 (5th Cir. 1994). The term was intended to reach "only those

individuals who were in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment." Kem Mfg. Corp. v. Wilder, 817 F.2d 1517 (11th Cir.1987).

Many courts have specifically held that an attorney does *not* qualify as a "legal representative" of a party for purposes of Rule 60(b) and, "[e]ven if the term 'legal representative' were construed to include a party's attorney-at-law, the term certainly should not extend to a party's *former* counsel." In re El Paso Refinery, LP, 37 F.3d 230, 234 (5th Cir. 1994). Mr. Ware is not the Debtor—GMC is a separate business entity. Mr. Ware also did not represent the Debtor, Mr. Gordon did and, even then, "legal representative" does not include a party's former counsel. Mr. Ware has not established he is in a position "tantamount" to that of the Debtor, or that his rights are so intimately bound up with the Debtor's that his rights were directly affected by the Dismissal Order. A remote pecuniary interest like that of a putative shareholder does not suffice. He does not have standing to pursue a Rule 60(b) motion.

On the other hand, Mr. Ware's standing to request relief under Rule 60(d)(3) is not limited to parties or their legal representative, but the moving entity must still have constitutional standing. See, e.g., In re Old ANR, LLC, 2019 WL 2179717, at *7 (Bankr. E.D. Va. May 17, 2019); Gache v. Hill Realty Assocs., LLC, 2014 WL 5048336, at *4-5 (S.D.N.Y. Sept. 22, 2014). Mr. Ware must show he has an injury in fact as a shareholder of GMC. The injury to his shareholder interest must be "actual or imminent," not "conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Here, Mr. Ware's alleged interest as a shareholder is only hypothetically at stake in this case. Mr. Ware contends that, if the case was reinstated, he would ultimately be entitled to funds. But the case was dismissed 19 years ago. No evidence has been presented or even alleged that the Debtor is still in business. The Court surmises the Debtor is not still in business

given Mr. Ware's convictions on securities fraud involving GMC. No evidence has been presented

that assets still exist to be distributed to creditors, much less to shareholders. What Mr. Ware really

wants, he is not entitled to: undoing his conviction and judgments against him. Since he has shown

no particular injury in his capacity as shareholder, the Court concludes he does not have standing

to pursue a Rule 60(d)(3) motion. But, if he did have standing, Mr. Ware would not be entitled to

relief under Rule 60(d)(3).

Rule 60(d)(3) allows for relief from a final judgment if the movant can show "fraud on the

court." Fed. R. Civ. P. 60(d)(3). "There is no statute of limitations for fraud on the court." In re

Roussos, 541 B.R. 721, 729 (Bankr. C.D. Cal. 2015). Where relief from a judgment is sought due

to fraud on the court, the fraud must be established by clear and convincing evidence. Booker v.

Dugger, 825 F.2d 281, 283 (11th Cir. 1987). "[O]nly the most egregious misconduct, such as

bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an

attorney is implicated, will constitute a fraud on the court." Rozier v. Ford Motor Co., 573 F.2d

1332, 1338 (5th Cir. 1978). Stated differently, the movant must show an "unconscionable plan or

scheme" to improperly influence the court's decision. Id. Fraud between parties does not constitute

fraud on the court, as it does not carry the same threat of public injury. S.E.C. v. ESM Group, Inc.,

835 F.2d 270, 273 (11th Cir. 1988).

Mr. Ware has not plead any evidence that the Subscribers perpetuated a fraud on the Court

or that the Court relied in any way on any misrepresentations of the Subscribers. As described

above, even if the Subscribers had no claim in the bankruptcy case, the Court would not vacate the

Dismissal Order. It was also entered in response to the U.S. Trustee's motion and the Debtor

consented. Mr. Ware's conclusory averments are insufficient to sustain his evidentiary burden on

the issue. Lustig v. Stone, 2019 WL 11660556, at *11 (S.D. Fla. Apr. 29, 2019), aff'd, 813 F.

App'x 461 (11th Cir. 2020) (conclusory statements of nefarious conduct are insufficient to establish fraud by clear and convincing evidence for purposes of Rule 60(d)(3)). Mr. Ware's allegations of "fraud" stem entirely from a purported scheme among the Subscribers and subsequent developments years later in the law on criminal usury and the litigation with the Subscribers. Mr. Ware offers only a rehash of previously rejected arguments. Furthermore, Mr. Ware fails to identify any improper misconduct designed to influence the decision of the Court, fabrication of evidence, or other such fraud on the court, as opposed to fraud between parties. Accordingly, Mr. Ware has not established a basis for relief under Rule 60(d)(3).

Mr. Ware does not cite to Rule 60(b) in his most recent motion to vacate (Doc. No. 84), but he did reference it in his 2012 Motion to Reconsider of which he complains. As discussed above, he does not have standing to bring such a motion, under the terms of Rule 60(b) or under Article III of the Constitution. But even if he did, he would not succeed in his request. As the Eleventh Circuit pointed out multiple times, motions under Rule 60(b)(1)-(b)(3) must be brought within one year. Fed. R. Civ. P. 60(c)(1). Even his 2012 Motion to Reconsider was filed way beyond that period. Motions under Rule 60(b)(4), (b)(5), and (b)(6) must be brought within a reasonable time, Fed. R. Civ. P. 60(c)(1), and even the 2012 Motion to Reconsider was brought nine years after the Dismissal Order was entered.

Mr. Ware has not established a basis for relief under Rule 60(b)(4) because the Dismissal Order is not void. The concept of a void judgment is narrowly construed. "A judgment is not void . . . simply because it is or may have been erroneous. . . . . Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." United

Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (cites omitted). The Dismissal Order is not based on any jurisdictional error. Thus, the judgment is not void.

No basis exists for setting aside the Dismissal Order under Rule 60(b)(5). Rule 60(b)(5) applies only to those judgments with prospective application. In re Macklin, 2015 WL 1945160, at *24 (Bankr. E.D. Cal. Apr. 8, 2015), aff'd sub nom. Macklin v. Deutsche Bank Nat'l Tr. Co., 2015 WL 9274103 (E.D. Cal. Dec. 21, 2015). Most often, Rule 60(b)(5) arises in the context of "institutional reform litigation" or prospective injunctions where the prospective actions are "reviewed for inequitable application because of changed circumstances." Lee v. Marvel Enters., Inc., 765 F.Supp. 2d 440, 451 (S.D.N.Y. 2011). No basis exists for setting aside the Dismissal Order under Rule 60(b)(5). Mr. Ware's request for relief does not arise in the context of "institutional reform litigation" and does not involve a prospective injunction. Here, the Dismissal Order has not been satisfied, released or discharged. Consequently, even if there was a subsequent change in law after the bankruptcy case was dismissed, that does not provide a basis for relief here.

Mr. Ware has articulated no basis that justifies relief under Rule 60(b)(6) as to the Dismissal Order. This section affords the Court some discretion to address issues raised by the parties that necessitate the setting aside of a prior order or judgment. However, it is not meant to supersede the requirements of Rule 60(b)(1) through (5). In other words, a Rule 60(b)(6) motion must be based on some reason other than those stated in clauses (1)-(5). Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1133 (11th Cir. 1986); see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993). The relief available under Rule 60(b)(6) is limited and is meant "only for extraordinary circumstances." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000) (quoting Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1288 (11th Cir. 2000)). To justify relief under Rule 60(b)(6), "a

party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." Pioneer, 507 U.S. at 393 (citing Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863 (1988)). The circumstances are not extraordinary to warrant reconsideration of the Dismissal Order.

For all these reasons, the Court finds Mr. Ware offers no circumstances that would constitute grounds for vacating the dismissal order under Rule 9024. Accordingly, the Court finds no basis to reopen this case or otherwise vacate the dismissal.

### g.   Whether the bankruptcy case should be transferred

Mr. Ware contends the bankruptcy case should be transferred to the Southern District of New York.

Bankruptcy Rule 1014(a)(1) requires a timely motion of a party in interest to request transfer of a case. Fed. R. Bankr. P. 1014(a)(1); see also In re Peachtree Lane Assocs., Ltd., 188 B.R. 815, 832 (N.D. Ill. 1995) (considering whether a movant qualified as a "party in interest" under section 1109 for purposes of a motion to transfer venue). To the extent Mr. Ware is a shareholder of the debtor and is seeking relief in his shareholder capacity, he could be a "party in interest" (the Court notes, however, Mr. Ware has not established he is in fact a shareholder). But he must still demonstrate he has constitutional standing. See Peachtree, 188 B.R. at 828 (movant must demonstrate legally protectable interest in the venue). He has failed to do so. But even if he had standing, the court could not and would not transfer a closed case.

Bankruptcy Rule 1014(a)(1) authorizes a court to transfer a properly venued case (in accord with 28 U.S.C. § 1412). If the case is improperly venued, Bankruptcy Rule 1014(a)(2) states the case may be dismissed or transferred (in accord with 28 U.S.C. § 1406). In both instances, the court must determine "that the transfer is in the interest of justice or for the convenience of the

parties." Fed. R. Bankr. P. 1014(a) & (b). Bankruptcy Rule 1014 requires a timely motion and

hearing with prior notice to the petitioners, the United States trustee, and other entities as directed

by the court. Id. Transferring venue of a bankruptcy case is not to be taken lightly, In re Enron

Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002), and the party seeking a change of venue has the

burden of proof, which must be carried by a preponderance of the evidence. In re Lehman Bros.

Holdings Inc., 2013 WL 5908057, at *5 (Bankr. S.D.N.Y. Nov. 4, 2013).

Mr. Ware has not carried his burden as he has presented no evidence to support transferring

the bankruptcy case. His request to transfer the case is far from timely, and the Court notes it was

Mr. Ware who initially filed the bankruptcy petition in the Northern District of Georgia and

presumably selected this venue for the bankruptcy case. In any event, there is no case for the Court

to transfer—the case was dismissed 19 years ago. While a court "has the authority to transfer a

case even where it lacks personal jurisdiction over it, once . . . dismissed . . ., the court cannot then

transfer the case to another district." Mirman v. Feiner, 915 F. Supp. 2d 282, 284 (E.D.N.Y. 2013)

(cites omitted); Marengo Films, Inc. v. Koch Int'l LLC, 2003 WL 21435728, at *5 (N.D. Tex. June

16, 2003) (since petition was already dismissed, it was not within the interest of justice to transfer

the case). The Court therefore finds no basis to transfer the bankruptcy case.[5]

### h. Referral to the Department of Justice, State Bar, SEC, or other investigative bodies

Mr. Ware asks the Court to refer this matter to the Department of Justice, to direct the SEC

to begin an enforcement action against the Subscribers and others, and to ask the Georgia Bar to

investigate the Subscribers' attorneys and others.

---

[5] Mr. Ware asks the Court to ask the AO to transfer the case to the Southern District of New York. The AO does not have authority to transfer cases. See Fed. R. Bankr. P. 1014(a) (providing "the court . . . may transfer the case" and "the court . . . may dismiss the case or transfer it") (emphasis added).

Pursuant to 18 U.S.C. § 3057, the Court, in limited circumstances, shall refer the question of whether a potential federal bankruptcy crime has been committed to the United States Attorney for investigation. That statute provides in relevant part:

> Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

18 U.S.C. § 3057(a). Pursuant to this provision, a judge may report certain conduct to the United States Attorney, but the Court has no authority to determine whether a prosecution should occur. In re Refrigeration Station, Inc., 1999 WL 33581627, *2 (Bankr. S.D. Ga. Dec. 15, 1999). A court is compelled to report facts whenever "reasonable grounds exist for a belief that a violation of the bankruptcy laws has occurred and that such violations have not been litigated before the bankruptcy and appellate courts." In re Narumanchi, 471 B.R. 35, 44 (D. Conn. 2012). The Court is not required to report all conduct since the section only covers laws relating to insolvent debtors, receiverships, or bankruptcy. Estes v. Ramirez, 2014 WL 11698007, *11 (S.D. Tex. June 13, 2014), amended in part, 2014 WL 11698095 (S.D. Tex. Aug. 7, 2014). Further, there must be some evidence for the court to form a reasonable belief a violation of bankruptcy laws has been committed. See In re Burt, 179 B.R. 297, 300 (Bankr. M.D. Fla. 1995); In re Walker, 2006 WL 3483480, *3 (Bankr. S.D. Fla. July 11, 2006). For example, a judge is not obligated to report all facts and circumstances underlying a stock transaction where there are no reasonable grounds for believing that any violations of the bankruptcy laws had been committed and where the same issue of fraud had been pleaded, argued and litigated before the bankruptcy, district, and appellate courts. In re Botany Indus., Inc., 463 F. Supp. 793, 799 (E.D. Pa. 1978), aff'd sub nom. Amalgamated Ins.

Fund of New York, Appeal of, 609 F.2d 500 (3d Cir. 1979), and aff'd sub nom. Botany Indus. Inc., in Matter of, 609 F.2d 500 (3d Cir. 1979).

Mr. Ware does not have standing to request the Court refer matters under 18 U.S.C. § 3057(a). A debtor (or its counsel or shareholder) cannot require a court to refer matters for criminal prosecution. Va. Hosp. Ctr. Arlington Health Sys. v. Akl (In re Akl), 2010 WL 1667294 (Bankr. D.D.C. Apr. 23, 2010); Mays v. Citibank, N.A., 2005 WL 6111610, *10 (S.D. Fla. Mar. 31, 2005), summarily aff'd, 180 Fed. Appx. 143 (11th Cir. 2006). This section does not directly or by implication establish any private right of action for a third party other than a federal judge, receiver, or trustee to request a report or referral to the United States Attorney. Id.

Mr. Ware asks the Court to refer this case to the Department of Justice for prosecution of violations of various laws, but such relief is not available for several reasons. First, Mr. Ware lacks standing to make such a request as there is no private right of action. Second, the Court can only refer alleged violations of bankruptcy laws. Third, the record is void of any evidence to form a reasonable belief that any violations of bankruptcy laws have been committed. Accordingly, there is no basis to refer this case to the United States Attorney for prosecution and the request is denied. The Eleventh Circuit determined a similar request in 2016 was frivolous.

Mr. Ware also requests the Court ask the Georgia Bar to investigate the Subscribers' attorneys and others. Pursuant to Bankruptcy Local Rule, attorney disciplinary matters are governed by Rules 83.1(C) and 83.1(F) of the Civil Local Rules for the District Court for the Northern District of Georgia. Local Rule 83.1(F)(3) provides, in relevant part, that "complaints alleging professional misconduct by an attorney admitted to practice in this Court . . . must be submitted . . . in writing and must state with particularity the basis for the allegations. Complaints of professional misconduct must be under oath." Upon receiving a complaint of professional

misconduct made under Local Rule 83.1(F)(3), the court must determine: "(i) whether the complaint should be terminated because the allegations are unjustified, frivolous, unsupported, or insubstantial; (ii) whether, for members of the State Bar of Georgia, the complaint should be referred to the State Disciplinary Board as a formal or informal complaint[.]" LR83.1(F)(4); see also Cohran v. State Bar of Georgia, 790 F. Supp. 1568, 1573 (N.D. Ga. 1992) (explaining the Office of the General Counsel of the State Bar of Georgia has the power to screen complaints against members of the bar and to "dismiss those complaints which are unjustified, frivolous, patently unfounded or which fail to state facts sufficient to invoke the disciplinary jurisdiction of the State Bar of Georgia.").

Mr. Ware has not set forth with particularity any allegations of professional misconduct. Instead, he has made a series of unsupported general allegations about the Subscribers' counsel. The Court notes, once again, that the bankruptcy case was pending 19 years ago; it is not clear that any of the counsel involved in the case are even still practicing law. Moreover, the issues alleged have been unsuccessfully litigated by Mr. Ware in other courts. The Court determines Mr. Ware has not set forth a basis for a referral to the State Disciplinary Board and, accordingly, declines to ask the State Bar to investigate attorney conduct.

Mr. Ware asks the Court to direct the SEC to begin an enforcement action against the Subscribers. The SEC is the agency required to enforce the securities laws, In re Hodge, 216 B.R. 932, 936 (Bankr. S.D. Ohio 1998), and the SEC retains the power to "make such investigations it deems necessary to determine whether any person has violated or is about to violate any [securities law.]" 15 U.S.C. § 78u(a)(1). All SEC investigations are conducted privately, and the Court cannot order the SEC to investigate. See *How Investigations Work*, U.S. Securities and Exchange Commission,      https://www.sec.gov/enforce/how-investigations-work.html.      Should      the

enforcement division of the SEC find that an investigation is needed, it can make that determination. See In re Colin, Hochstin Co., 41 B.R. 322, 326 (Bankr. S.D.N.Y. 1984). The SEC has in fact already prosecuted Mr. Ware and obtained a criminal conviction against him, so it seems unlikely they will conduct an additional investigation. The securities issues alleged have been unsuccessfully litigated by Mr. Ware in other courts, and the Court determines Mr. Ware has not set forth a basis to direct the SEC to investigate.

### i. Recusal

Mr. Ware asks that this judge "resign," which the Court interprets as a request for recusal. Recusal of this judge from hearing any further matter in this case is governed by 28 U.S.C. § 455(a), which provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The appropriate test under Eleventh Circuit law is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). The Court will "not consider the perceptions of idiosyncratic, hypersensitive, and cynical observers." Id. (cites omitted). And "the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990) (cites omitted). Further, a judge is not "'recusable for bias or prejudice [when] his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings.'" Tucker v. Mukamal, 2015 WL 5166276 at *2 (11th Cir. Sept. 4, 2015) (citing Liteky v. United States, 510 U.S. 540, 551 (1994)). A judge is not disqualified by a litigant's suit or threatened suit against him. United States v. Ford, 293 F. Supp. 3d 1138, 1140 (E.D. Cal. 2018).

Section 455 "does not invite recusal whenever it is requested by a party." <u>Guthrie v. Wells Fargo Home Mortg., N.A.</u>, 2015 WL 1401660 at *3 (N.D. Ga. March 26, 2015). In fact, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." <u>Id.</u> (cites omitted). "[C]ourts must exercise great care in considering motions for recusal so as to discourage their use for purposes of judge shopping or delay[.]" <u>Barna v. Haas (In re Haas)</u>, 292 B.R. 167, 175 (Bankr. S.D. Ohio 2003).

Importantly, "it is the facts, not the movant's allegations, that control the propriety of recusal." <u>Guthrie</u>, 2015 WL 1401660 at *3. "Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'" <u>United States v. Cerceda</u>, 188 F.3d 1291, 1293 (11th Cir. 1999) (cites omitted). Furthermore, allegations made under 28 U.S.C. § 455 need not be taken as true. <u>Weatherhead v. Globe Int'l, Inc.</u>, 832 F.2d 1226, 1227 (10th Cir. 1987). Finally, motions to recuse under Section 455 "are typically decided by the presiding judge." <u>Guthrie</u>, 2015 WL 1401660 at *3.

Mr. Ware's allegations seem to be that this judge cannot render a fair judgment. This is not true. Moreover, the Supreme Court has recognized that recusal is not required even if the judge has formed a negative opinion of the party, except in rare circumstances. "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced where properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. <u>Liteky</u>, 510 U.S. at 550-51. The Court has no knowledge of this case except through Mr. Ware's pleadings. Mr. Ware's allegations do not form a legal basis for recusal of the Judge.

### j.  Limitation on Future Filings

As described at the outset, Mr. Ware sends documents to chambers almost daily. Since March 2021, the docket reflects over <u>200</u> additional entries. This is simply absurd.

A litigant's right of access to the courts is neither absolute nor unconditional. <u>In re Armstrong</u>, 309 B.R. 799, 805 (B.A.P. 10th Cir. 2004). "Litigants who file frivolous, abusive papers 'interfere with the orderly administration of justice.'" <u>In re Meltzer</u>, 535 B.R. 803, 820 (Bankr. N.D. Ill. 2015). The Eleventh Circuit "repeatedly has held that federal courts have the power to manage their dockets and curb vexatious litigation." <u>United States v. Maass</u>, 2005 WL 2298296, at *3 (11th Cir. Sept. 22, 2005) (citing <u>Martin-Trigona v. Shaw</u>, 986 F.2d 1384, 1387 (11th Cir. 1993); <u>Copeland v. Green</u>, 949 F.2d 390 (11th Cir. 1991)). Bankruptcy courts have inherent powers to control the course of litigation before them. <u>Armstrong</u>, 309 B.R. at 805. That power is supplemented by 28 U.S.C. § 1651(a) and 11 U.S.C. § 105(a). <u>In re Agrawal</u>, 2018 WL 4850376, at *1 (Bankr. W.D. Okla. Oct. 4, 2018). The "All Writs Act," 28 U.S.C. § 1651(a), authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." By its terms, the All Writs Act applies to bankruptcy courts to regulate the activities of abusive litigants. <u>In re Melcher</u>, 2014 WL 1410235, at *9 (B.A.P. 9th Cir. Apr. 11, 2014).

Dissatisfaction with the outcome of a bankruptcy case does not entitle a litigant to file frivolous documents after the case is over. <u>In re Packer Ave. Assocs.</u>, 884 F.2d 745, 748 (3d Cir. 1989). An injunction limiting a litigant's filings is appropriate where necessary to prevent undue interference with the orderly administration of bankruptcy proceedings. <u>In re Amir</u>, 2013 WL 5302549, at *2-3 (Bankr. N.D. Ohio Sept. 18, 2013). For example, in <u>Packer</u>, the District Court enjoined the pro se debtor from filing any further documents relating to the case, finding that 27

frivolous filings were an "unwarranted expenditure of administrative and judicial time and resources." Packer, 884 F.2d at 748.

The Court finds the more than 200 submissions in less than two years in this case closed since 2003 is abusive and frivolous. Mr. Ware has continued filing papers requesting the same relief despite a denial of three requests for mandamus by the Eleventh Circuit. The papers are filed almost daily and vary with the court from which Mr. Ware requests relief. But these requests for relief are outdated and simply not available in this Court. For example, in addition to the requests for relief addressed in this Order, he has asked the Court to determine the Subscribers were unregistered broker-dealers; to require the Subscribers to show cause as to why they are not liable to Mr. Ware, GMC, and "others" for their criminal conduct; to notify the U.S. Attorney to vacate the New York criminal proceedings; to notify the SDNY courts that all SDNY proceedings have been vacated, abrogated, and annulled; to refer district court judges, judges and trustees of this Court, the U.S. Trustee, the Subscribers, their counsel, and his criminal attorneys to the Department of Justice. He has alleged that the Court and its employees have participated in collection of a RICO loan sharing debt and violated RICO and that they are in "contempt" of the order in the SDNY Case dismissing that case. These documents contain incendiary allegations against judges of every court who come in contact with this case without any basis and some derogatory and inappropriate language. They misstate what has happened in other courts. Mr. Ware is a disbarred attorney but, even so, he knows better.

As stated above, the Court will instruct the Clerk to cease filing documents that are emailed, or that are sent to chambers, or that are copies of pleadings in other cases, or correspondence to or from anyone. But the Court believes Mr. Ware should be barred from filing any more pleadings, documents or papers of any kind in this closed bankruptcy case. The case has been closed for 19

years and it is simply over. Because of the age of the closed case, there is no reason for this Court to permit filings upon review. This Order will provide Mr. Ware with 14 days to show cause why the court should not bar him from filing, sending, or otherwise delivering documents for filing in this case.

### III.    CONCLUSION

As set out above, Mr. Ware is not entitled to any of the relief he seeks, either individually or on behalf of the Debtor. It is therefore

**ORDERED** that all relief requested by Mr. Ware, whether in his individual capacity or as "legal representative" of the Debtor, is **DENIED** including without limitation:

- his request to reopen this case;

- his request to vacate the dismissal in this case or deem it null and void;

- his request to reinstate the automatic stay in this case;

- his request to refer any person or entity to the Department of Justice, the Securities and Exchange Commission, the Georgia Bar or any other body for investigation;

- his request for a status conference;

- his request to transfer this bankruptcy case to the bankruptcy court in the Southern District of New York or ask the Administrative Office of the Courts to make such a transfer;

- his request for this Court to "validate its 'Article 3 jurisdiction'";

- his request for this Judge to resign or recuse herself;

- his request for the Court to issue show cause orders to the Subscribers, their counsel and others;

- his request for the Clerk to docket certain undocketed documents;

-   his request to find the Clerk violated her duties and the rules regarding filing and docketing and certification of the docket.

It is **ORDERED FURTHER** that the Clerk must only place on the docket of the Group Management case papers properly filed with the Clerk (not emailed) and which are orders, judgments or activities reflecting requests for relief in this bankruptcy case. Any papers emailed to chambers and not delivered directly to the Clerk in accordance with Northern District Georgia Local Rules and General Orders are not filed and therefore need not be reflected on the docket.

**ORDERED FURTHER** that the Clerk need not file or docket papers delivered to the Clerk if they are copies of pleadings filed in cases other than the above-styled case, copies of correspondence sent to any person or entity, or correspondence to the Clerk.

**ORDERED FURTHER** that the clerk need not provide docket certification more than once in a 12-month period unless the Court orders otherwise.

**ORDERED FURTHER** that Mr. Ware is directed to show cause within fourteen (14) days of the date hereof as to why he should not be deemed a vexatious litigant and be prohibited from making any further filings in this closed bankruptcy case.

**END OF ORDER**

**Distribution List**

Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd.
Ste 9-L
Brooklyn, N 11226