**IT IS ORDERED as set forth below:**



Date: December 13, 2022

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GROUP MANAGEMENT CORP., | Case No. 03-93031-WLH |
| DEBTOR. | |

**ORDER DENYING REQUEST FOR CERTIFICATIONS AND CLARIFICATIONS OF THE COURT'S OCTOBER 24, 2022 ORDER AND OTHER REQUESTS FOR RELIEF**

**THIS MATTER** is before the Court on a number of pleadings filed in the name of Group Management and Ulysses T. Ware at Docs. Nos. 259, 260, 261, 264, 265, 269, 270, 271, and 273. Ulysses T. Ware ("Mr. Ware") has filed hundreds of documents in this dismissed and closed bankruptcy case seeking various forms of relief including requests to reopen this case; vacate the

1

dismissal in this case or deem it null and void; reinstate the automatic stay in this case; refer any person or entity to the Department of Justice, the Securities and Exchange Commission, the Georgia Bar or any other body for investigation; for a status conference; transfer this bankruptcy case to the bankruptcy court in the Southern District of New York or ask the Administrative Office of the Courts to make such a transfer; "validate its 'Article 3 jurisdiction'"; for this Judge to resign or recuse herself; issue show cause orders to the Subscribers, their counsel and others; for the Clerk to docket certain undocketed documents; and find the Clerk violated her duties and the rules regarding filing and docketing and certification of the docket. The Court addressed Mr. Ware's requests in an order dated October 24, 2022 (the "October Order").

Since the Court entered the October Order, Mr. Ware has filed multiple documents including a Request for Certifications and Clarifications of the Court's October 24, 2022 (Doc. No. 259), a Request for Immediate First Amendment Right of Access to Stolen Judicial Records (Doc. No. 260), Article III Jurisdictional Request (Doc. No. 261), a Verified Response in Opposition; Demand for Leave to Filing Injunction Hearing; and Request for other Reliefs [sic] (Doc. No. 264), a Supplemental Memorandum of Law and Appendix (Doc. No. 265), a Notice of the Prevailing Parties and Beneficiaries (Doc. No. 269), a Motion for Immediate First Amendment Access (Doc. No. 270), and a Notice of and Motion for Material Witness Order (Doc. No. 271) (collectively the "Motions").[1] The various motions largely repeat and rehash Mr. Ware's arguments, which the Court addressed in the October Order, and seek reconsideration of the denial of Mr. Ware's requests for relief.

---

[1] Mr. Ware also filed a Request for Stay (Doc. No. 266), which the Court addressed at Doc. No. 262.

2

Background

The facts are detailed in the October Order and incorporated herein. Group Management Corp ("GMC" or "Debtor") filed a Chapter 11 petition under the Bankruptcy Code on March 18, 2003. The petition, filed by "Thomas Ware" as attorney for GMC, indicated GMC was a corporation. On March 26, 2003, the Court entered an order requiring GMC to obtain new counsel because Mr. Ware had been suspended from practicing law. GMC retained Sims Gordon to represent it.

On April 10, 2003, the U.S. Trustee filed a Motion to Dismiss the bankruptcy case with prejudice or, alternatively, to convert the case to Chapter 7. The Subscribers (as defined in the October Order) filed their own Motion to Dismiss or, alternatively, a Motion for Relief from Stay, and brief. On May 20, 2003, the Court signed an order submitted and approved by the U.S. Trustee, the Subscribers, and the Debtor, and dismissed the case with a bar to refiling for 180 days. No one appealed or challenged the dismissal order. The case was closed on June 3, 2003.

This Court next heard from Mr. Ware in late 2011 when he sent letters to the chambers of Judge Murphy (the bankruptcy judge who handled the case in 2003). Mr. Ware submitted an "Emergency Motion for Fraud on the Court Proceedings" seeking relief from the 2003 dismissal, among numerous other requests. The Bankruptcy Court sent Mr. Ware a letter on July 25, 2012 informing him that the submission did not concern an active bankruptcy case. Mr. Ware continued to send documents to the Bankruptcy Court. On October 5, 2012, the Bankruptcy Court sent Mr. Ware a second letter stating that the papers did not relate to an active bankruptcy case before the Court.

From 2012 on, Mr. Ware continued to submit papers to the Court. The Court responded to Mr. Ware on October 1, 2016; February 5, 2017; April 5, 2021; April 21, 2021; June 9, 2021; June

23, 2021; and August 18, 2022. Nevertheless, the letters continued and increased in frequency. Beginning in 2021, the Court placed Mr. Ware's submissions on the docket. The Court reviewed the hundreds of submissions from Mr. Ware.

On October 24, 2022, the Court entered the October Order in which it attempted to address Mr. Ware's various concerns. The Court concluded, inter alia:

- A bankruptcy court is an Article I court, not an Article III court, but had and has jurisdiction of this case;

- The Court accurately maintained the docket in this case;

- Mr. Ware lacked constitutional standing to seek to reopen the case to vacate the dismissal;

- Reopening the case was not proper;

- The bankruptcy case should not be transferred to the Southern District of New York;

- The bankruptcy case should not be referred to the United States Attorney, Georgia Bar, SEC, or other investigatory body; and

- Recusal was not warranted.

Almost immediately, Mr. Ware started filing papers. The Motions request various relief including:

- A determination the Subscribers had no standing to seek dismissal or participate in the bankruptcy case;

- Recusal and disqualification of the judge;

- Reconsideration of the decision to not reopen or otherwise vacate dismissal of the bankruptcy case;

- A request for certification that the docket is complete;

- A criminal referral.

4

All of these requests have been made and considered previously. Mr. Ware also seeks additional relief including:

- A determination he has standing to seek relief because GMC is a sole proprietorship and he is its sole owner;
- Access to records relating to his mandamus petitions; and
- An opportunity for witness testimony.

For the most part, the Court construes these requests as a motion for reconsideration of the October Order. Having considered Mr. Ware's written submissions, and the entire record of this case, the Court determines reconsideration and the new relief requested is not warranted.

Reconsider Standard

Federal Rule of Civil Procedure 59, made applicable by Bankruptcy Rule 9023, permits bankruptcy courts to alter or amend an order or judgment. Fed. R. Civ. P. 59(e), Fed. R. Bankr. P. 9023. As explained by the Supreme Court, the rule provides courts with a corrective function and "may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 486, n.5 (2008) (citing 11 C. Wright & A. Miller, Fed. Prac. & Proc. § 2810.1, pp. 127-128 (2nd ed. 1995)); Banister v. Davis, 140 S. Ct. 1698, 1703 (2020). Accordingly, to prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish an error of law or fact. In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). "[M]ere disagreement with the court's ruling is not a proper basis for seeking reconsideration under Civil Rule 59(e)." In re Bayati, 2015 WL 6470522 *5 (9th Cir. B.A.P. 2015).

Previously Considered Arguments

Mr. Ware seeks to rehash several previously rejected arguments. He argues the Court had no record on which to base the October Order, requests a determination the Subscribers had no standing, requests reinstatement of the bankruptcy case, requests recusal of the Judge, and requests a criminal referral. These are legal arguments that were previously raised and rejected, and they do not establish a basis for reconsideration.

### Record

Mr. Ware first contends the Court had no record on which to base the October Order. That is not correct. Mr. Ware has sent the Court over 200 documents, including copies of documents he submitted to the courts (and received from the courts) in a number of cases in the Southern District of New York including 02-cv-2219, 04-cr-1224, 05-cr-1115, and 22-cv-3409. Those documents have been received and docketed in this matter. The Court considered all of those papers. The Court did not make factual determinations in the October Order. Instead, it made its legal conclusions assuming Mr. Ware's version of facts was correct. Based on that record, the Court issued the October Order. Mr. Ware has not established the Court erred in its review of the record.

### The Subscribers' Standing

Mr. Ware contends the Subscribers and their counsel lacked Article III standing. Mr. Ware's complaint seems to be that the Subscribers did not have a valid claim in the bankruptcy case and were not parties in interest authorized to seek relief in the case and the Court erred by failing to credit his argument. Mr. Ware argues, as he has previously, that due to events occurring years after the bankruptcy case was dismissed, the Subscribers lost their "party in interest" right to file a motion to dismiss in 2003. But, standing to file a motion to dismiss is determined at the time the motion was filed. See In re Allison, 2006 WL 2620480, at *3 (Bankr. S.D. Tex. Sept. 12,

6

2006). In 2003, the Subscribers asserted they were creditors of the Debtor and, as such, were parties in interest. 11 U.S.C. § 1109(b). The Debtor listed the Subscribers as creditors, although disputed. The fact GMC disputed the Subscribers' claim does not eliminate their standing to file a motion to dismiss. In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991).

Dismissal of the SDNY Case No. 02-cv-2219 in 2007 also did not impact the Subscribers' standing to seek dismissal of the bankruptcy case in 2003. As the Court explained in the October Order, subsequent developments in the law have no bearing on whether the Subscribers could be considered "parties in interest" in 2003. That is because cases are decided in accordance with the law existing at the time of the decision. See Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989). Thus, developments in 2007 did not, and could not, affect the bankruptcy case proceedings in 2003.

Moreover, the Court did not determine whether the Subscribers had a claim in the bankruptcy case. The Subscribers asserted a claim in the case but, ultimately, no determination of the amount or validity of the Subscribers' claim occurred because the Debtor consented to dismissal. Dismissal of the case was also not dependent on the Subscribers' participation in the case because the U.S. Trustee had filed a Motion to Dismiss raising several grounds for dismissal. In other words, dismissal was not contingent on the Subscribers participating in the case or requesting dismissal. See In re Johnston, 149 B.R. 158 (B.A.P. 9th Cir. 1992). In any event, the Court never decided the validity of the Subscribers' claims, it merely dismissed the case, thereby returning the parties to their pre-bankruptcy status. Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 454 (2017). The Court finds no basis to reconsider its determination that the Subscribers' standing to seek dismissal of the bankruptcy case in 2003 was not impacted by later litigation and subsequent developments in the law.

### Reopening or Otherwise Vacating Dismissal

Mr. Ware has not established a basis for the Court to reconsider its determination that reopening or otherwise vacating the dismissal of the bankruptcy case is not warranted. This case was closed 19 years ago in 2003 after it was dismissed. Reopening a case that was dismissed and closed 19 years ago would be extraordinary, and Mr. Ware has presented no newly discovered evidence or a compelling reason to reopen the case. There is no estate to be administered. When a case is dismissed, the automatic stay ends and property revests in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B). In other words, dismissal under section 349(b) returned the Debtor to its pre-bankruptcy status and the estate ceased to exist. 11 U.S.C. § 349(b); In re Westgate Nursing Homes, Inc., 518 B.R. 250, 255 (Bankr. W.D.N.Y. 2014); see also In re Sweports, Ltd., 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014) (noting the dismissal order terminates the estate); In re Garnett, 303 B.R. 274, 278 (E.D.N.Y.2003) ("[T]here simply is no bankruptcy estate after the dismissal has been entered."). Where, as here, there is no estate to administer, reopening the case would be "meaningless." State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1996); In re Atari, Inc., 2016 WL 1618346, at *11 (Bankr. S.D.N.Y. Apr. 20, 2016); In re Hashiman, 2020 WL 5914605 (B.A.P. 9th Cir. Oct. 5, 2020). Mr. Ware has not established the Court made an error of law or fact in determining the ultimate relief he seeks—reopening and reinstatement of the Chapter 11 bankruptcy case—has merit. Accordingly, there is no basis for reconsideration.

### Request for certification that the docket is complete

Mr. Ware also asks for the Court to certify that the docket is complete. As explained in the October Order, the Bankruptcy Clerk is the official custodian of the records and dockets of the

bankruptcy court. 28 U.S.C.A. § 156(e). Pursuant to Bankruptcy Rule 5003(a), a clerk must maintain a docket and enter "each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the Courts." Fed. R. Bankr. P. 5003(a). The Bankruptcy Clerk, however, was not obligated to docket any items after the case was closed, Miller v. Johnson, 541 F.Supp. 1165, 1176 (D.D.C. 1982), actions taken by higher courts or in other jurisdictions, letters sent to chambers and the Bankruptcy Clerk, or any proposed orders. As the Court previously explained, Rule 5005 requires the Bankruptcy Clerk to keep a record of judgments, orders, and activities in the Bankruptcy Court; it does not require the Bankruptcy Clerk to docket every filing or pending activity in other cases or communications that are not filings. In re Malloy, 2022 WL 1488437, at *2 (E.D. Pa. May 11, 2022); BLR 9003-2. The Court concluded the Bankruptcy Clerk more than met her duty under Rule 5006 to accurately maintain the docket in this case. Mr. Ware has not presented anything new to suggest otherwise.

Further, the Bankruptcy Clerk has already provided certified copies of the docket to Mr. Ware on several occasions (October 5, 2012; April 5, 2021; June 23, 2021; and August 17, 2022). Mr. Ware's request for an additional certification is unnecessary and in direct contradiction to the October Order, which provided the Bankruptcy Clerk need not provide docket certification more than once in a 12-month period unless the Court orders otherwise. The Bankruptcy Clerk last certified the docket on August 17, 2022, and need not certify the docket again now.[2]

**Recusal**

Mr. Ware seeks recusal of this Judge. Recusal is governed by 28 U.S.C. § 455(a), which provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in

---

[2] The Court also notes that Mr. Ware, like any member of the public, may view the docket access case information, including the docket sheet and the filed documents, at any time via the Internet through the Public Access to Court Electronic Records (PACER) system. United States Bankruptcy Court for the Northern District of Georgia, *CM/ECF Information*, https://www.ganb.uscourts.gov/cmecf-information (last accessed Dec. 8, 2022).

9

any proceeding in which his impartiality might reasonably be questioned." The appropriate test under Eleventh Circuit law is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). "Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'" United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999) (cites omitted). Section 455 "does not invite recusal whenever it is requested by a party", Guthrie v. Wells Fargo Home Mortg., N.A., 2015 WL 1401660 at *3 (N.D. Ga. March 26, 2015), and recusal is not required even if the judge has formed a negative opinion of the party. Liteky v. United States, 510 U.S. 540, 550-51 (1994).

Mr. Ware has not established grounds for disqualification. The Court has no knowledge of this case except through Mr. Ware's pleadings, and Mr. Ware has not established an error of law or fact to suggest otherwise. Accordingly, the Court finds no grounds for reconsideration of the October Order denying recusal.

**Criminal referral**

Mr. Ware asks the Court to refer this matter for criminal investigation. As previously explained, pursuant to 18 U.S.C. § 3057, the Court, in limited circumstances, may report certain conduct to the United States Attorney. In re Refrigeration Station, Inc., 1999 WL 33581627, *2 (Bankr. S.D. Ga. Dec. 15, 1999). There is no private right of action for a third party, other than a federal judge, receiver, or trustee, to request a report or referral to the United States Attorney. Va. Hosp. Ctr. Arlington Health Sys. v. Akl (In re Akl), 2010 WL 1667294 (Bankr. D.D.C. Apr. 23, 2010); Mays v. Citibank, N.A., 2005 WL 6111610, *10 (S.D. Fla. Mar. 31, 2005), summarily aff'd, 180 Fed. Appx. 143 (11th Cir. 2006). Moreover, the Court is not required to report all conduct since the section only covers laws relating to insolvent debtors, receiverships, or

10

bankruptcy. Estes v. Ramirez, 2014 WL 11698007, *11 (S.D. Tex. June 13, 2014), amended in part, 2014 WL 11698095 (S.D. Tex. Aug. 7, 2014). For example, a judge is not obligated to report all facts and circumstances underlying a stock transaction where there are no reasonable grounds for believing that any violations of the bankruptcy laws had been committed and where the same issues of fraud were previously litigated. See In re Botany Indus., Inc., 463 F. Supp. 793, 799 (E.D. Pa. 1978), aff'd sub nom. Amalgamated Ins. Fund of New York, Appeal of, 609 F.2d 500 (3d Cir. 1979), and aff'd sub nom. Botany Indus. Inc., in Matter of, 609 F.2d 500 (3d Cir. 1979).

Mr. Ware cannot request a referral on his own and, even if he could, he has not presented any evidence to form a reasonable belief that any violations of bankruptcy laws have been committed. Accordingly, the Court finds no basis to reconsider its prior order declining to refer this case for prosecution.

New Arguments

In his recent filings, Mr. Ware presents a series of new arguments. He contends he has standing to represent GMC because it is a sole proprietorship and he is its sole owner; requests access to all records relating to his requests for mandamus relief; and argues that testimony should be allowed. As a preliminary matter, to the extent these arguments were not previously raised, they are waived. See Banister, 140 S. Ct. at 1703 (2020); In re Thomas, 2020 WL 6939624, at *1 (Bankr. N.D. Ill. Nov. 10, 2020). But the arguments are all without merit.

**Mr. Ware's Standing**

Mr. Ware seeks reconsideration of the Court's conclusion that he does not have standing to seek various forms of relief. The October Order addressed his standing as a party in interest as an alleged shareholder and as a legal representative of the Debtor. Mr. Ware has not established any basis for the Court to reconsider its ruling that he lacks such standing. But Mr. Ware now

11

alleges that GMC is a sole proprietorship, he is GMC's sole owner, and he may represent GMC on his own.

A sole proprietorship "has no legal existence apart from its owner." Lattanzio v. COMPTA, 481 F.3d 137, 140 (2d Cir. 2007). Unlike corporations, sole proprietorships are not separate entities, and a sole proprietorship's income and expenses are those of its owner. In re APCO Merch. Servs., Inc., 585 B.R. 306, 318 (Bankr. E.D.N.Y. 2018); see also Sole Proprietorship Definition, Black's Law Dictionary (11th ed. 2019) ("A business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity.").

When GMC filed bankruptcy, it did so as a corporation. (Doc. No. 1 at 1). It is doubtful Mr. Ware became a sole proprietor of GMC because he was not the sole shareholder of the Debtor according to the sworn schedules filed by the Debtor in this case. (The petition states there were 720 shareholders, but Schedule H filed later listed only two shareholders, neither of whom was Mr. Ware.) He has provided no explanation of what happened to the other shareholders.

Mr. Ware has alleged GMC was dissolved, but that does not make him a sole proprietor of GMC. The dissolution of a corporation terminates the entity but, in virtually all jurisdictions, statutes provide for the continuation of its corporate existence to wind up and liquidate its business affairs. 72 A.L.R.4th 419; see also In re Bilbo, 2014 WL 689097, at *1 (Bankr. N.D. Ga. Feb. 5, 2014) (upon administrative dissolution, the corporation "continues its corporate existence," though it is restricted from carrying on any business, except that necessary for winding up its affairs and liquidating its business); Del. Code Ann. tit. 8, § 278; Fla. Stat. § 607.1405(1). If GMC was dissolved as Mr. Ware claims, it could not initiate any activity other winding up its affairs. See e.g., Gas Pump, Inc. v. Gen. Cinema Beverages of N. Fla., Inc., 263 Ga. 583, 584 (1993). If the individual shareholders and officers of a dissolved corporation continue to conduct a corporation's

12

business post-dissolution, and not for the purposes of winding up the former corporation's affairs, they may become personally liable for obligations incurred by the corporation during its pre-dissolution activities. In re Cedillo, 573 B.R. 405, 437 (Bankr. E.D.N.Y. 2017). If GMC were administratively dissolved, as Mr. Ware contends, the corporation did not automatically become a sole proprietorship. See Columbus Cheer Co. v. City of Columbus, 155 So. 3d 744, 746 (Miss. 2014) (finding argument that administratively dissolved corporation automatically transformed into a sole proprietorship unavailing). Furthermore, to the extent GMC exists as a sole proprietorship, it is a different entity from the corporation that filed bankruptcy and reinstating the corporate bankruptcy would not provide relief to the alleged sole proprietorship.

Further, to the extent GMC may exist as a sole proprietorship, it would not be eligible for bankruptcy relief. "A sole proprietorship is not a 'person' for purposes of the Bankruptcy Code because it is neither an individual, nor a partnership, nor a 'corporation.'" In re Know Thy Self, Inc., 2006 WL 6589908, at *3 (Bankr. N.D. Ga. Mar. 17, 2006) (citing In re Christenberry, 336 B.R. 353, 356 (Bankr.E.D.Tenn.2005); 11 U.S.C. § 101(41)). "Since it is not a 'person,' a sole proprietorship is ineligible to be a debtor in bankruptcy." Id. (citing 11 U.S.C. § 109(a)-(b); see also In re T.W. Koeger Trucking Co., 105 B.R. 512, 515 (Bankr. E.D. Mo. 1989) (because a sole proprietor has no powers beyond that of an individual, it was ineligible to file solely as an "unincorporated company or association"). A sole proprietor, i.e., the person operating the proprietorship, can seek bankruptcy protection, but Mr. Ware is not a debtor personally, and he was not the Debtor in this case he seeks to reinstate. He has presented no basis for reconsideration of the Court's analysis of his standing.

13

### Request for access to judicial records

Mr. Ware requests access to records related to his mandamus proceedings in the Eleventh Circuit Court of Appeals (Doc. No. 270). Such documents do not concern activity in this case and are not a part of the bankruptcy docket.

Pursuant to Bankruptcy Rule 5003(a), a clerk must maintain a docket and enter "each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the Courts." Fed. R. Bankr. P. 5003(a). "Activity" generally means "something which a person . . . or group chooses to do," *Activity*, Oxford English Dictionary, https://www.oed.com/view/Entry/1958 (last visited Oct. 21, 2022), or "work performed to create a result." *Activity*, Dictionary.org, https://thelawdictionary.org/activity/ (last visited Oct. 21, 2022). Activity includes "judgments, orders, and pleadings . . . and proceedings in a case." 9 Collier on Bankruptcy ¶ 5003.03. Letters and communications to or from chambers are not filings with the Court, Rule 5005(a)(1), and need not be docketed. BLR 9003-2. Only orders, judgments and activities that concern a particular case, however, are to be entered on the docket for that case. Documents concerning events that take place elsewhere are docketed in the courts in which they take place and are not part of the bankruptcy case. In re Malloy, 2022 WL 1488437, at *2 (E.D. Pa. May 11, 2022). Accordingly, any documents relating to Mr. Ware's petitions for writ of mandamus before the Eleventh Circuit would be docketed there, not in this bankruptcy case. The relief requested in Doc. No. 270 is denied.

### Request for witness testimony

Mr. Ware filed a Motion for Material Witness Order (Doc. No. 271) asking the Court to direct certain persons and entities to give "exculpatory and impeachment" testimony "to rebut and impeach the fraudulent claims and allegations in the Risible Show Cause Order [sic], Dkt. 256" at

14

the December 8 hearing. The motion also asks for access to records, as sought in Doc. No. 270, and for arrest warrants for a variety of judges and court personnel. Mr. Ware alleges the material witnesses have aided and abetted a RICO unlawful debt collection, have attempted to collect "criminal usury debt" and have violated the res judicata effect of a voluntary dismissal filed in 02-cv-2219 (SDNY). Mr. Ware contends that 29 individuals and entities, including this Judge, Judge Murphy (who handled the bankruptcy case in 2003 and has since retired), Judge Mullins (who responded to the Eleventh Circuit's request regarding Mr. Ware's mandamus relief and who has since retired), the Clerk of Court, the Office of the U.S. Attorney, the Subscribers and their attorneys, a SDNY magistrate judge, the SEC and others should be compelled to testify (Doc. No. 271). Mr. Ware alleges the individuals and entities would testify that the Subscribers have/had no claims, that they conspired with the United States Trustees' office, that the judges and court personnel conspired against him by dismissing this case and not granting his motion for reconsideration in 2012, that the bankruptcy court committed fraud in its response to Mr. Ware's request for mandamus filed in the Eleventh Circuit, and that the Court has obstructed justice by not granting the relief he seeks.

The witness testimony Mr. Ware seeks is irrelevant. The Court ruled in the October Order that, as a matter of law, Mr. Ware is not entitled to the relief he seeks, even under the facts he alleges. The Court did not attempt to resolve disputed issues of fact, but concluded their resolution was unnecessary to address the various motions. Further, this Court addressed Mr. Ware's argument that the case should be reopened, and the dismissal vacated. If he disagrees, an appeal is his appropriate remedy. Finally, Mr. Ware sought mandamus relief in 2015 in the Eleventh Circuit and any issues about that request should be addressed there. The Bankruptcy Court's response is filed there and testimony about that response has no bearing on the relief Mr. Ware ultimately

seeks here, reinstatement of the 2003 bankruptcy case. Accordingly, no basis exists to allow witnesses to testify in this case and the relief requested in the motion at Doc. No. 271 is denied.

<u>Conclusion</u>

For all these reasons set forth herein, the Court finds Mr. Ware offers no circumstances that would constitute grounds for reconsidering the October Order or granting the relief requested in Doc. Nos. 270 and 271. Mr. Ware attempts to relitigate issues already decided and rehashes the same arguments he has put forth in his hundreds of filings in this dismissed and closed case. He has not established an error of law or fact that would support reconsideration under Rule 9023. Accordingly,

**IT IS ORDERED** that Mr. Ware's requests for relief in Docs. Nos. 259, 260, 261, 264, 265, 269, 270, 271, and 273 are **DENIED**.

**END OF ORDER**

**Distribution List**

Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd.
Ste 9-L
Brooklyn, N 11226